# CODIFIED ORDINANCES OF OAKWOOD

## PART SEVENTEEN - PROPERTY MAINTENANCE CODE

---

## ADOPTION OF THE INTERNATIONAL PROPERTY MAINTENANCE CODE (2003)


| | |
|---|---|
| Chapter 17-ONE | Administration, Enforcement, Inspections |
| Chapter 17-TWO | Definitions |
| Chapter 17-THREE | Exterior and Interior Maintenance |
| Chapter 17-FOUR | Light, Ventilation and Occupancy Limitations |
| Chapter 17-FIVE | Plumbing Facilities and Fixture Requirements, Swimming Pool Drainage |
| Chapter 17-SIX | Mechanical and Electrical Requirements |
| Chapter 17-SEVEN | Fire Safety Requirements |
| Chapter 17-EIGHT | Residential Rental Unit Inspection |

## ADOPTION OF THE INTERNATIONAL PROPERTY MAINTENANCE CODE (2003)

In 1996, a committee consisting of representatives of the three statutory members of the International Code Council: Building Officials and Code Administrators International, Inc. (BOCA), International Conference of Building Officials (ICBO) and Southern Building Code Congress International (SBCCI) developed a comprehensive set of regulations for existing buildings that was consistent with the existing model property maintenance codes at the time. This 2003 edition presents the code as originally issued, with changes approved through the ICC Code Development Process through 2002.

The City of Oakwood hereby adopts by reference the International Property Maintenance Code (2003 Edition), as the Property Maintenance Code of this city, subject to the modifications set forth in this Part Seventeen of the Codified Ordinances.

The entire text of the nationally published International code is not reprinted in the following pages, but copies may be obtained (for a reasonable reproduction cost) from the administrative offices of the City of Oakwood. This portion of the Codified Ordinance makes various changes, deletions and additions ("modifications") to the International code so as to adapt it for use in and by the City of Oakwood.

In the International Code, various sections are grouped together into divisions called Articles. To correspond with the other portions of the codified ordinances of this city, the articles are changed to chapters within this Part Seventeen of those ordinances. Accordingly, Article 1 of the International Property Maintenance Code entitled Administration becomes Chapter 17-One.

In order to correlate paragraph numbers of the International Property Maintenance Code with the numbers assigned to chapters and sections within this part of the Codified Ordinances, all International Code section numbers shall be deemed to be preceded by the number 17. For example, to locate in the Oakwood Property Maintenance Code any modification of paragraph 100.1 of the International Code, look for 17-100.1; and to locate International Code paragraph 400.3, look for 17-400.3 in the Oakwood Property Maintenance Code.

## CHAPTER 17-ONE
## ADMINISTRATION, ENFORCEMENT, INSPECTIONS

17-101 General.
17-101.1 Title.
17-101.2 Scope and purpose.
17-101.3 Application of other codes
17-103 Appointment of code official and deputies.
17-103.1 General.
17-103.2 Appointment.
17-103.3 Deputies.
17-104 Duties and powers of code official.
17-104.3 Inspections.
17-104.4 Right of entry.
17-104.7 Department records.
17-106 Violations
17-106.1 Unlawful Acts
17-106.3 Prosecution of violation.
17-106.4 Violation penalties.
17-107 Notices, Orders, and Pre-Sale Inspection.
17-107.1 Notice to owner or to person or persons responsible.
17-107.2 Form of notice.
17-107.5 Pre-sale inspection and certificate of occupancy required for new owners and tenants.
17-107.6. Responsibility for correcting defective items.
17-107.7 Water and sewer bills to be paid immediately as a condition of occupancy certificate.
17-107.8 Certificate of occupancy required for new owner.
17-107.9 Disclosure of violations to new owner.
17-107.10 After-vacancy inspections for business uses.
17-107.11 Fees for inspections and certificates of occupancy.
17-108 Unsafe structures and equipment.
17-108.1 General.
17-108.1.1 Unsafe structures
17-108.1.3 Unsafe because unfit for human occupancy.
17-108.2 Closing of vacant structures.
17-108.4 Placarding of structure.
17-108.4.1 Placard removal.
17-108.5 Unlawful premises constitute public nuisances.
17-109 Emergency measures.
17-109.1 Imminent danger.
17-109.2 Temporary safeguards.
17-109.3 Closing streets.
17-109.4 Emergency repairs.
17-109.5 Costs of emergency repairs.
17-110 Repair, closing or removal of unsafe, hazardous, or unlawful nuisance conditions.
17-110.1 Unsafe, hazardous conditions -- repair, closing or removal.
17-110.2 Unlawful premises --repair.
17-110.3 Failure to comply.
17-110.4 Real estate tax lien, civil lawsuit, for costs incurred by city.
17-111 Appeals and variances.
17-111.1 Appeals.
17-111.2 Variances.
17-111.3 Fees for appeals and variances.
17-111.4 Property maintenance board.
17-112 Fire insurance trust fund.
17-112.1 General matters.

## Administration and Enforcement

All the provisions of Chapter 1 of the International Property Maintenance Code (2003) are incorporated by reference so as to apply in the City of Oakwood, except to the extent modified by or deleted in this Chapter 17-One.

**17-101 GENERAL.**

**17-101.1 TITLE.**

This International Property Maintenance Code is amended to read as follows:

This portion of the Codified Ordinances shall be known as the Property Maintenance Code of the City of Oakwood (referred to in this Part Seventeen of the Codified Ordinances as the "code").

**17-101.2 SCOPE AND PURPOSE.**

The title of this International Property Maintenance Code Section 101.2 is amended to read as set forth above. The body of this section is amended by adding the following material at the end of the paragraph:

Additional purposes of this code are to conserve and protect the value of premises, to protect and improve aesthetic aspects of premises and the City of Oakwood, and to provide for protection against and elimination of nuisances.

**17-101.3 APPLICATION OF OTHER CODES.**

The last sentence of this section is hereby revised to read as follows:

Nothing in this Code shall be construed to cancel, modify or set aside any provisions of the Oakwood Zoning Code.

**17-103 APPOINTMENT OF CODE OFFICIAL AND DEPUTIES.**

The title of International Code Section 103 is amended to read as set forth above.

**17-103.1 GENERAL.**

This section is amended to read as follows:

The Code Official shall enforce all provisions of this Code.

**17-103.2 APPOINTMENT.**

This section is amended to read as follows:

The Code Official shall be appointed by the City Manager.

**17-103.3 DEPUTIES.**

This section is amended to read as follows:

The City Manager shall have the authority to appoint a deputy code official, other related technical officers, inspectors and other employees. All persons so appointed by the City Manager, or holding delegated authority from the City Manager with regard to the administration or enforcement of any part of this code, shall be deemed to constitute deputy code officials and shall be entitled to exercise all powers of the code official during his temporary absent or disability or while carrying out the administration or enforcement duties delegated to them by the City Manager.

**17-104 DUTIES AND POWERS OF CODE OFFICIAL.**

**17-104.3 INSPECTIONS.**

The authorization given by this section for the code official to enter any structure or premises shall exist only to the extent that official has a right of entry as referred to in the International Code Section 104.4.

**17-104.4 RIGHT OF ENTRY.**

The following sentence is added at the end of this section:

The code official shall be deemed to be an agent of the owner or operator to the extent the owner or operator has agreed to allow the code official access to the structure or premises.

**17-104.7 DEPARTMENT RECORDS.**

This section is amended to read as follows:

Any records kept by or for the code official or by other employees of the city in connection with the administration or enforcement of this code shall be subject to the public records statutes of the State of Ohio.

**17-106 VIOLATIONS**

**17-106.1 UNLAWFUL ACTS.**

International Code Section 106.1 is hereby modified and divided into five separate paragraphs. Paragraph A. includes all of International Code 106.1. In addition, the following material shall be added to and at the end of paragraph A:

A. The unlawful acts described in this paragraph A. shall include transfer of legal or equitable ownership of premises or change of tenant without having obtained a pre-sale inspection as required by 17-107.5 and 17-107.11 or without furnishing the proposed new owner a true copy of any conditional certificate of occupancy or other notice of violation and obtaining a signed receipt for it, as required by 17-107.10. Further, these unlawful acts described herein shall also include occupancy or use of any premises by a new owner or tenant without that owner having obtained from the code official (or from the previous owner) a valid certificate of occupancy for the premises, as required by 17-107.5. These unlawful acts described herein shall also include the failure to timely submit the information required by Section 17-800.4.

Paragraphs B through E are hereby added to Section 106.1, as follows:

B. It shall be a separate unlawful act for any person, firm or corporation (who previously committed an unlawful act as described in paragraph A immediately above, the contents of which are incorporated herein by reference) to commit a second such act, whether contrary to or in violation of exactly the same or some other requirement of this code, within 5 years after conviction of the previous unlawful act under paragraph A.
C. It shall be a separate unlawful act for any person, firm or corporation (who previously committed an unlawful act as described in paragraph A immediately above, the contents of which are incorporated herein by reference) to commit a third or subsequent act, whether contrary to or in violation of the same of some other requirement of this code, within 10 years after conviction of the previous unlawful act under paragraph A.
D. It shall be unlawful for any person, firm or corporation to fail to obey, at any time within 60 days after compliance was required, a lawful order of the code official or to remove or deface a placard or notice posted under the provisions of this code.
E. It shall be a separate unlawful act for any person, firm or corporation to fail to obey a lawful order of the code official at any time on or after the 61st day after compliance was required.

**17-106.3 PROSECUTION OF VIOLATION.**

In the third sentence of this paragraph, the word "shall" is hereby changed to "may", so as to make a civil law suit for an injunction an option rather than a requirement.

**17-106.4 VIOLATION PENALTIES**

The Content of this section is amended to read as follows:

A. Whoever commits an unlawful act as described in paragraph A of 17-106.1 shall be guilty of a minor misdemeanor.

B. Whoever commits an unlawful act as described in paragraph B of 17-106.1 shall be guilty of a fourth degree misdemeanor.

C. Whoever commits an unlawful act as described in paragraph C of 17-106.1 shall be guilty of a third degree misdemeanor.

D. Whoever commits an unlawful act as described in paragraph D of 17-106.1 shall be guilty of a fourth degree misdemeanor.

E. Whoever commits an unlawful act as described in paragraph E of 17-106.1 shall be guilty of a third degree misdemeanor.

**17-107 NOTICES, ORDERS, AND PRE-SALE INSPECTION.**

The title of International Code Section 107 is amended to read as set forth above.

**17-107.1 NOTICE TO OWNER OR TO PERSON OR PERSONS RESPONSIBLE.**

The word "condemnation" is changed to its actual meaning, i.e. ordered to be vacated. As another change, the following new paragraphs are added at the end of this section:

If the Oakwood version of the Property Maintenance Code refers to a notice or order being given to lienholders (see, for example, 17-110) service of it upon a lienholder shall be accomplished in the same manner as notices and orders are to be served upon the owner of any property.

If the defective aspects caused the property to be unsafe or hazardous and subject to a notice to vacate, and if those unsafe or hazardous conditions have not been corrected within the time allowed in the vacation notice, that notice shall be deemed to have become an order to vacate. The consequences of such an order are set forth in 17-107 of this code.

**17-107.2 FORM OF NOTICE.**

The title of International Code Section 107.2 is amended to read as set forth above. Subparagraphs 1 through 6 in that section are hereby redesignated as A through F. In addition, that paragraph F is revised to read as follows:

F. Include an explanation of the owner's (and lienholder's) right to appeal the decision of the code official in the manner described in 17-111.1 and/or to seek a variance under 17-111.2.

**Administration and Enforcement**

---

The content of this section is supplemented by the following new subparagraphs G, H, I and J which explain additional matters to be included in the notice:

G. If the notice is in the form of a conditional occupancy certificate (resulting from a pre-sale inspection under 17-107.5) which lists aspects of the premises not in compliance with other sections of this code, it shall include an explanation of the certificate of occupancy procedures and the possibility of the owner shifting responsibility for correcting those unsafe or unlawful items to the new owner through a written agreement between the parties under 17-107.

H. The notice of any violation and of the requirement that it be corrected shall provide at least 30 days prior notice of the fact that, if the corrective work has not been completed within the reasonable time allowed in the correction order which is part of the notice, the city intends to enter upon the premises under authority of 17-110 to perform the work required by the notice. Such advance notice may be reduced or dispensed with as explained in 17-109.5 dealing with emergency situations. This type of advance notice provides a basis for the city to recover (through the procedures described in Ohio Revised Code 715.261) any costs it may incur in correcting unsafe structures or hazardous conditions or abating unlawful conditions as nuisances.

I. The notice shall give an explanation of the fact that, as an alternative to performing the correction work within the reasonable time allowed in the notice (and to avoid the city entering upon the property to perform that work if the owner fails to do so), the owner or any lienholder of record may enter into a written contract with the city in which that owner or lienholder gives a written promise, guaranteed by a sufficient surety (as described below), that the work will be completed within such additional reasonable time as may be agreed to between those parties. Such a sufficient surety must be a performance bond, letter of credit or cash deposited with the city in the amount of one and one-half times the cost of the work, as reasonably estimated by the city, with the terms, conditions and issuing company or bank to be satisfactory to the city attorney.

J. The notice shall include an explanation of the intention of the city to recover the costs it may incur in correcting such unsafe, hazardous, or unlawful nuisance conditions through certifying those costs to the county auditor to be placed as a

real estate tax lien against the premises (under Ohio Revised Code 715.261 as referred to in paragraph H above) and/or to commence a civil lawsuit to recover those costs from the owner and/or to use other legal remedies to enforce this code.

**17-107.5 PRE-SALE INSPECTION AND CERTIFICATE OF OCCUPANCY REQUIRED FOR NEW OWNERS AND TENANTS.**

The title of this section is amended to read as set forth above. The content of this section is revised to read as follows:

A. It shall be unlawful for the owner of any real estate premises to transfer legal or equitable ownership of that premises ("title"), or change of tenant, without having obtained a pre-sale inspection of it under this code. This inspection will enable the code official to work toward accomplishing the purposes of this code by listing any repairs or other work necessary to eliminate any unsafe or hazardous conditions, to comply with applicable requirements of the Fire Code, Zoning Code and other ordinances, and also to correct any unlawful nuisance conditions in the form of violations of this Property Maintenance Code. Such an inspection and list shall be part of the process of issuing the required certificate of occupancy.

B. Application for a pre-sale inspection shall be made on such form and in such manner as may be prescribed from time to time by the code official. The city may charge a fee for this service as provided for under Chapter 153.

C. Within 21 days after application was made for a pre-sale inspection, the code official shall have completed the inspection, compiled a list of any items to be brought into compliance with this code and applicable provisions of the Fire Code, Zoning Code and other ordinances, and shall have issued a violation letter to the owner or lienholer of a premises. This period of time may be extended by the code official if a delay is caused by any matter beyond the reasonable control of that official.

D. A certificate of occupancy shall be valid for one year after the violations have been corrected to the satisfaction of the code official or until 60 days after the premises may be transferred to a new owner or tenant, whichever occurs sooner.

A certificate of occupancy signed by the code official shall be evidence that the premises complies with the requirements of this code and all

other applicable ordinances. If the inspection disclosed aspects of the property not in compliance, the certificate shall be merely a conditional certificate of occupancy. The condition shall be that the defective aspects of the premises must be brought into compliance with this code within such reasonable length of time as may be set forth in the certificate.

Such a conditional certificate shall be deemed to be a notice under 17-110.1 and/or 17-110.2 that the premises and its owners are in violation of this code or other applicable ordinances and that the unsafe, hazardous, or unlawful conditions must be corrected. The certificate shall constitute a notice, as referred to in 17-106.1 and its subparts, and shall include all matters required by that section.

**17-107.6 RESPONSIBILITY FOR CORRECTING DEFECTIVE ITEMS.**

This section is added to implement the Oakwood pre-sale inspection procedure. It reads as follows:

The responsibility for making repairs or completing such work as may be necessary to correct any defective aspects of the premises shall rest upon the person who was the owner immediately prior to the inspection which was the basis for the notice under 17-107.1. Such responsibility may be shifted to a new owner by a written agreement in which that new owner assumes the responsibility, after having been given a copy of the conditional certificate of occupancy including the list of violations. A signed copy of such an agreement shall be filed with the code official. A written assumption by the new owner shall release the previous owner from responsibility to the city under this code.

If responsibility is so assumed, the new owner shall be obligated to comply with the requirements of the conditional certificate of occupancy within the time required by the code official.

A new owner who does not assume such responsibility but instead relies upon the prior owner being obligated to correct violations identified during an inspection of the premises takes the risk that the prior owner may fail to do so as and when required. If that occurs, the new owner is at risk because any unsafe structure on the premises must be ordered to be vacated under 17-108.1.1. Further, the conditional certificate of occupancy constitutes a repair, closing or removal order under 17-110 to remedy any unsafe, hazardous or any unlawful nuisance condition, with the expenses of such a procedure to be assessed against the premises as part of real estate taxes on that property.

### 17-107.7 WATER AND SEWER BILLS TO BE PAID IMMEDIATELY AS A CONDITION OF OCCUPANCY CERTIFICATE.

This section is added to implement the Oakwood pre-sale inspection procedure. It reads as follows:

> To obtain either a certificate of occupancy or a conditional certificate of occupancy, all outstanding water and sewer bills for the property must be paid at once and in full.

### 17-107.8 CERTIFICATE OF OCCUPANCY REQUIRED FOR NEW OWNER.

This section is added to implement the Oakwood pre-sale inspection procedure. It reads as follows:

> It shall be unlawful for any person who acquires legal or equitable title to a premises (after the date this Property Maintenance Code is adopted) to occupy or to use it without having obtained from the code official or the previous owner a valid certificate of occupancy (absolute or conditional) for that premises. As explained in 17-107.5 D, a certificate of occupancy is valid for only one year after its date or until 60 days after title to the premises is transferred to a new owner, whichever occurs sooner. No new occupancy certificate shall be issued for the premises without a new inspection (which may or may not reveal and require correction of additional unsafe or unlawful matters).

### 17-107.9 DISCLOSURE OF VIOLATIONS TO NEW OWNER.

This section is added to implement the Oakwood pre-sale inspection procedure. It reads as follows:

> It shall be unlawful for the owner of any property upon whom a notice of violation has been served (in the form of a list of defects or violations attached to a conditional certificate of occupancy or as a result of violations otherwise noted by the code official) to transfer legal or equitable ownership of the property to another until the defects and violations listed in that notice have been corrected, or until the owner or a lienholder has entered into a written contract to make the corrections (as described in 17-107.2), or until such owner furnishes the proposed new owner a true copy of that notice and obtains a signed receipt that he has done so and that the proposed new owner is aware of the pending notice and its requirement of corrective work.

**17-107.10 AFTER-VACANCY INSPECTIONS FOR BUSINESS USES.**

This section is added to implement the Oakwood pre-sale inspection procedure. It reads as follows:

> Pre-sale type inspections applicable to business uses shall be conducted upon a change of tenant or ownership.
>
> All inspections must be conducted as soon as reasonably practical after being vacated by tenants or in contemplation of a change in ownership as required by Chapter 17-107.5. Such commercial rental units must be brought into compliance with requirements of this Property Maintenance Code in connection with each change of occupancy by new tenants.

**17-107.11 FEES FOR INSPECTIONS AND CERTIFICATES OF OCCUPANCY.**

This section is added to implement the Oakwood pre-sale inspection procedure. It reads as follows:

> Fees to be charged for pre-sale inspections (and similar inspections made of rental units after tenants vacate those units), shall be as set by the City Manager in the fee schedule issued under Chapter 153 of the Administrative Code. Said fees shall be paid at the time an individual requests a pre-sale inspection and no pre-sale inspection shall be conducted until such time as the appropriate fee is received by the city.

**17-108 UNSAFE STRUCTURES AND EQUIPMENT**

**17-108.1 GENERAL.**

The word "structure" is changed to "premises" so as to apply this section not only to structures but also to the land on which they are located.

In the third line of the International Code section, the words "or is found unlawful" are hereby deleted. In this way, the grounds for ordering a premises to be vacated in whole or in part are limited to those situations in which it is found to be unsafe. The word "condemned" is changed to its actual meaning, i.e. ordered to be vacated. This change is made to avoid misunderstandings which might occur because in Ohio law the word "condemned" often refers

to the process in which a government purchases real estate through the power of eminent domain; whereas in the International Code the meaning of "condemned" is simply that something is ordered to be vacated. In addition, the words "shall be" as they precede the word "condemned" (already changed to "ordered to be vacated") are revised to read "may be."

The following sentence is added at the end of this section:

The notice and order to vacate issued under this section shall be in addition to, and may be combined with, any notice and order issued under 17-108 for the repair, closing or removal of any unsafe premises.

**17-108.1.1 UNSAFE STRUCTURES.**

In the first line the word "structure" is changed to "premises." In the third line the words "the structure" are changed to "any structure on the premises or to any persons who may enter upon the premises." In the fifth line the word "structure" is changed to "premises." Further, the body of this section is amended to add at its end the following new paragraphs:

Further, an unsafe premises is one on which any building is insecure or is open and vacant or is abandoned or deserted.

In any event, every premises shall be deemed to be unsafe if it has any of the following conditions:

A. It is structurally defective in that any bearing wall or bearing element, interior or exterior, leans, buckles or is in such other condition as to substantially weaken the structural support it provides.

B. It is structurally defective in that any structural part has insufficient strength to be reasonably safe for the purpose used, or any portion of a floor or roof is overloaded so as to create a substantial risk of collapse of, or damage to, any part of the structure.

C. It is structurally defective in that it lacks facilities required by this Property Maintenance Code (or by the applicable Fire Code or any applicable state or federal statutes) for ingress and egress, since the absence of such facilities creates a safety risk in the event of fire or other hazards.

D. It is structurally defective in that it lacks minimum light, air and sanitation facilities required by this code (or by any applicable state or federal statutes) for the protection of any other land, building or structure or so required for the protection of present or future occupants or users of the structure or any member of the general public.

E. It is structurally defective in that it has been damaged by fire, wind or other causes, in whole or in part, so as not to provide adequate shelter from the elements or to have become dangerous to any other land, building or structure or to present or future occupants or users or to any member of the general public.

F. It is structurally defective in that it has any item (including but not limited to land and/or vegetation) so attached or in such condition that there is a substantial risk it will fall in a manner causing danger to any other land, building or structure or to present or future occupants or users or to any member of the general public.

G. It constitutes a hazardous condition in that any portion of it has become, in whole or in part, a serious hazard to that structure or premises, to any other structure or premises, or to the physical or mental health or safety of present or future occupants or users or of any member of the general public, and its condition is such that it constitutes a violation of any of the following:.

1. Sections of Chapter or 17-Three Exterior and Interior Maintenance, which define conditions which cause a premises to be unsafe or hazardous.

2. Chapter 17-Four, Light, Ventilation and Occupancy Limitations;

3. Chapter 17-Five, Plumbing Facilities and Fixture Requirements,

4. Chapter 17-Six, Mechanical and Electrical Requirements;

5. Chapter 17-Seven, Fire Safety Requirements;

H. It is unfit for human occupancy as defined in Section 17-108.1.3 below.

**17-108.1.3 UNSAFE BECAUSE UNFIT FOR HUMAN OCCUPANCY.**

The title of International Code Section 108.1.3 is amended to read as set forth above.

The body of this section is amended by changing "structure" to "premises." The grounds for a premises to be declared to be unfit for occupancy are limited to the matters set forth in this section, which is also amended to add at its end the following new paragraphs:

In any event, every premises is deemed to be unfit for human occupancy, as described in this section if its condition is such that it constitutes a violation of:

A. Any section of Chapter 17-Three, which defines conditions which makes premises unfit for human occupancy.

B. violation of Chapter 17-Three, General Requirements,

C. violation of Chapter 17-Four, Light, Ventilation and Occupancy Limitations,

D. violation of Chapter 17-Five, Plumbing Facility and Fixture Requirements;

E. violation of Chapter 17-Six, Mechanical and Electrical Requirements;

F. violation of Chapter 17-Seven, Fire Safety Requirements;

A structure found to be unfit for human occupancy or use under this section shall be deemed to be an unsafe structure.

**17-108.2 CLOSING OF VACANT STRUCTURES.**

International Code Section 108.2 is deleted from this part of the code which deals with the closing of vacant structures. The topic of closing vacant structures has been moved to Section 17-110, Repair, Closing or Removal of Unsafe, Hazardous or Unlawful Nuisance Conditions.

**17-108.4 PLACARDING OF STRUCTURE.**

The word "condemnation" is changed to its actual meaning, i.e. an order to vacate the premises. Similarly, the word "condemned" as part of the language to be used on the placard is hereby changed to its meaning: Ordered to be vacated.

**17-108.4.1 PLACARD REMOVAL.**

The word "condemnation" is changed to its true meaning: an order to vacate the premises.

**17-108.5 UNLAWFUL PREMISES CONSTITUTE PUBLIC NUISANCES.**

The title of International Code Section 108.5 is amended to read as set forth above. The body of this section is rewritten to read as follows:

Unlawful premises are those determined by the code official to be in whole or in part in violation of any of the sections of Chapter 17-Three. All properties which are unsafe, unfit for human occupancy or otherwise in violation of the Property Maintenance Code may be declared as public nuisances under the common law and laws of Ohio.
Such unlawful premises constitute public nuisances by virtue of the injury and annoyance they cause to the public and the damage they do to public interests. That injury, annoyance or damage results from the negative impact of blight, deteriorated, defective, and unlawful premises due to physical decay, neglect, unlawful use, and/or lack of maintenance. Such deterioration is caused by physical decay, neglect, extensive use, or lack of maintenance. It produces effects such as, but not limited to, holes, breaks, cracking, peeling, and rusting.

## 17-109 EMERGENCY MEASURES.

### 17-109.1 IMMINENT DANGER.

The following language is hereby added as an explanation of procedure:

Except in emergency situations as described in 17-1098, no unsafe premises may be ordered to be vacated in whole or in part until the notice procedure in 17-1076 has been completed. That procedure requires written notifications plus allowance of a reasonable time for correcting the violations.

### 17-109.2 TEMPORARY SAFEGUARDS.

In this section the words "shall order" are revised to read "is hereby authorized and empowered to order."

Similarly, the words "shall cause" are revised to read "is hereby authorized and empowered to cause."

### 17-109.3 CLOSING STREETS.

In this section the words "shall temporarily close" are revised to read "is authorized and empowered to close temporarily."

### 17-109.4 EMERGENCY REPAIRS.

In this section the words "shall employ" are revised to read "is hereby authorized and empowered to employ, subject to compliance with city charter and ordinance requirements as to making contracts or financial commitments on behalf of the city."

### 17-109.5 COSTS OF EMERGENCY REPAIRS.

The first sentence of this section states that costs incurred in the performance of emergency work are to be paid by the jurisdiction. In order to make this sentence valid under Ohio law, the following language is added to and at the end of that sentence:

> subject to compliance with city charter and ordinance requirements as to making contracts or financial commitments on behalf of the city.

The second sentence of this section requires legal action to be taken. To provide the flexibility which would be beneficial to the city and its taxpayers, the words "shall institute" in that sentence are changed to "may institute."

The following language is added to and at the end of this section:

> The costs of such emergency repairs to correct hazardous conditions shall be certified by the clerk of the city council to the county auditor as a tax lien upon the premises in the manner provided in Ohio Revised Code 715.261. Based on the emergency nature of such costs, notice to owners and lienholders of the emergency work may be given by other than certified mail, may be given less than the 30 days advance otherwise required under 17-107.1, or may be dispensed with entirely. If no advance notice at all is given, however, the lien authorized by R.C. 715.261 for such costs shall be subordinate to any liens of prior record.

## 17-110 REPAIR, CLOSING OR REMOVAL OF UNSAFE, HAZARDOUS, OR UNLAWFUL NUISANCE CONDITIONS.

The title of this portion of the code is amended to read as set forth above.

### 17-110.1 UNSAFE, HAZARDOUS CONDITIONS -- REPAIR, CLOSING OR REMOVAL.

The title of this section is amended to read as set forth above. In addition, the body of this section is rewritten to read as follows:

> The code official shall give notice to order the owner of any premises (and also the holders of legal and/or equitable liens upon that premises) declared by that official to be all or partly unsafe (as defined in 17-108.2, .3 or .4) to perform such repairs as necessary to make that premises safe, to secure any insecure structure, to close any open and vacant structure, or, in the alternative, to demolish and remove that structure or the unsafe aspect of the premises. Any permits required by the Building Code or Zoning Code of this city for such repair or demolition work must be obtained before such work is commenced.

The notice giving this order shall comply with the requirements of Section 17-107 and shall allow a reasonable time for such corrective work or demolition and removal, including adequate time to obtain permits, and in non-emergency situations shall provide notice at least 30 days in advance of proposed entry onto the premises by the city to perform that work.

The notice referred to in this section shall be in addition to, and may be combined with, the order to vacate which may be issued for any unsafe premises as directed by 17-108.3.

**17-110.2 UNLAWFUL PREMISES -- REPAIR.**

The title of this section is amended to read as set forth above. In addition, the body of this section is rewritten to read as follows:

With regard to unlawful premises constituting public nuisances (as defined in 17-108.5 above), the code official shall follow the same notice procedures as described immediately above in 17-110.1 to order that the unlawful conditions be repaired or removed. The notice is to comply with the provisions of Section 17-106.

The notice and order with regard to unlawful premises shall not provide the alternative of demolition and removal and shall not be combined with any order to vacate, because such orders to demolish and remove or to vacate may be issued only for unsafe rather than unlawful premises.

**17-110.3 FAILURE TO COMPLY.**

The language of 17-110.3 of the International Code is deleted entirely and is replaced by the following material:

Whenever there has been failure to comply, within the time required, with an order issued under this 17-110 of the code, the code official shall cause the work to be performed by the city or by contract or arrangement with private persons. Any such contract or arrangements with private persons shall comply with city charter and ordinance requirements as to making contracts or financial commitments on behalf of the city. Such a failure to comply means not only a failure to complete the work within the required time but also failure to use the alternative procedure (described in 17-107.2 I and referred to in the notice) of entering into a contract with the city within the required time, guaranteed by a sufficient surety, to perform the work at a later date.

**17-110.4 REAL ESTATE TAX LIEN, CIVIL LAWSUIT, FOR COSTS INCURRED BY CITY.**

The title of this section is amended to read as set forth above. The language of 17-110.4 of the International Code is deleted entirely and is replaced by the following material:

The cost of work required to be performed through an order referred to in 17-110 shall be certified by the clerk of the city council to the county auditor as a tax lien in the manner prescribed in Ohio Revised Code 715.261; and/or the city may commence a civil lawsuit to recover those costs.

**17-111 APPEALS AND VARIANCES.**

**17-111.1 APPEALS.**

The title of this section is revised as set forth above. The content shall be changed to read as follows:

A. Any person aggrieved by a decision or order of the code official shall have the right to appeal that matter to the Property Maintenance Board. To do this, a printed or typed written notice of appeal (sometimes referred to in the International Code as a petition) must be signed by that person and filed with the office of the city manager within 14 days after the date service of the decision or order had been completed.

B. An appeal shall be a means of obtaining a hearing on a contention that the code official misinterpreted or misapplied some provision of this code.

C. The notice of appeal shall specify the decision or order appealed from and shall set forth the grounds of the appeal.

D. Stay of proceedings: An appeal shall stay all proceedings on the decision or order from which the appeal is taken, unless the code official certifies to the Property Maintenance Board that a stay would cause imminent peril to life or imminent risk of substantial damage to property. In the event the code official so certifies, the proceedings to enforce the order or decision appealed from shall not be stayed, except by an injunction or other equitable order issued by a court, after notice to the city.

E. Hearing on appeal: The board shall select a reasonable time and place for a hearing on the appeal. Notice of the hearing date shall be given to the appellant and the city in the same manner as

service is to be made under 17-107.3. If the appellant is not the owner of the property in question, such notice may be given to that property owner in the same manner.

F. The board may affirm, modify or reverse the order or decision appealed from. The decision of the board on an appeal shall be limited to applying this code; and the board may not disregard, vary or modify the code language. Any such decision of the board shall be deemed to be a final administrative order appealable to the courts. The city shall be deemed to be adversely affected and aggrieved by a board decision which modifies or reverses an order or decision of the code official, and the city shall have the right to appeal such a decision to the court. An appeal to court shall stay enforcement proceedings in the same manner as described in sub-section D above.

**17-111.2 VARIANCES.**

The title of this section is revised to read as set forth above. The content of this section, including subsections 111.2.1 through 111.2.5, is changed to read as follows:

A. The Property Maintenance Board may, after a public hearing, authorize variances from the requirements of this code.

B. An application for a variance shall be printed or typewritten, shall be signed by the person requesting the variance, and shall be filed by the owner of the premises with the office of the city manager. This filing must be made within 14 days after any order or decision of the code official was given to a person responsible for compliance with this code in the manner described in Chapter 17-107. Thereafter, it shall be transmitted, along with all pertinent papers, to the members of the Property Maintenance Board. The application shall set forth the particular requirement from which a variance is requested, and shall be on such form as may be prescribed by the code official.

C. The board shall select a reasonable time and place for a hearing on the variance request. Notice of the time and place of the public hearing shall be published in a newspaper of general circulation in the city not less than 5 nor more than 40 days before the hearing. Such notices shall also be mailed to the variance applicant to the property owner of record, and to owners of other parcels of real estate within 200 feet of any portion of the subject premises.

D. Standards for variances: No variance shall be granted unless the board makes conclusions of fact that:

1. granting the variance will not impair an adequate supply of light or air to adjacent properties;

2. granting the variance will not significantly increase the danger of fire or structural collapse nor significantly impair the health, safety, morals or welfare of the occupants or the public;

3. granting the variance will eliminate peculiar and practical difficulties or undue hardship which would otherwise result upon the owner or operator of the premises if the terms of this code were applied without such variance;

4. granting the variance will not create blight or constitute a blighting influence on adjoining properties, tending to lead to progressive deterioration and downgrading of the neighborhood;

5. granting the variance will not diminish or impair the standards of maintenance in this city, the value of the subject property, or property values in the surrounding area; and

6. strict enforcement of the code requirements would be manifest injustice and would be contrary to the spirit and purpose of this code or contrary to the public interest.

In granting a variance, the board may specify the manner and time within which the variance shall be carried out, and may require other improvements or safeguards or the performance of conditions deemed necessary to secure the intent of this code. A variance decision of the board shall be deemed to be a final administrative order, appealable to the courts. The city shall be deemed to be adversely affected by a board decision granting a variance, and the city shall have the right to appeal such a decision to the court. Any appeal shall stay the effect of the variance decision until the court case is terminated.

**17-111.3 FEES FOR APPEALS AND VARIANCES.**

The title of this paragraph is changed to read as set forth above. The content is revised to read as follows:

Fees for variances and appeals under this Property Maintenance Code shall be as prescribed by the city manager in the fee schedule authorized by Chapter 153 of the Administrative Code.

**17-111.4 PROPERTY MAINTENANCE BOARD.**

In the International Code, 111.2 created such a board but that section number has been used to provide for appeals from code requirements. This section provides for the creation and membership of a Property Maintenance Board.

A. Creation and membership: A Property Maintenance Board is hereby created. It shall consist of 15 persons appointed by the City Council as members, 3 of those members being appointed from persons residing in each of the five districts depicted on the map of the city appended to this code and made a part hereof, marked Appendix B. At the time this Property Maintenance Code is enacted, a Citizens Housing Committee is in existence, having been created under the previous Housing Code of the city. Members of that previous committee shall constitute the original members of the Property Maintenance Board, and that committee is now terminated.

B. Term of office: The terms of board members shall be for 5 years. Appointments shall be attempted to be made in such a manner that the term of no more than one member from any one district shall expire in any one calendar year. If any member resigns, dies or moves out of the district from which that member was appointed, a replacement member shall be appointed by the City Council for the balance of the unexpired term of office.

C. Duties, quorum, and voting: The board shall have the duty to hear and decide all appeals and variances filed under this code, and shall also be responsible for authorizing the issuance of a citation by the city when an owner, occupant or agent fails to take remedial action to correct code violations within a reasonable period of time as determined by the Building Commissioner. The three members from each district shall constitute the Property Maintenance Board for the purpose of hearing appeals and variances and authorizing the issuance of citations regarding property in that district. If one or more of those three persons is unable to serve, any one or more of the remaining members of the board may be designated by the chairperson as replacement(s) so as to provide three persons to hear and decide each case. A majority of the full board of 15 members shall select a chairperson. Decisions of the board on any appeal or variance shall be made by a majority vote of the three person panel. Failure to obtain a majority vote to reverse or modify a decision or order appealed from shall constitute affirmance of that order. Similarly, failure to obtain a majority vote to grant a variance shall constitute denial of the variance.

D. Burden of proof: The person who files an appeal or a request for a variance shall have the burden of proving by a preponderance of the evidence that his appeal or variance should be granted. The board shall have subpoena power to compel attendance of witnesses.
LEGISLATIVE HISTORY: Amended 4200, passed 5/3/93; Ord. 4261, passed 7/18/94.

## 17-112 FIRE INSURANCE TRUST FUND.

### 17-112.1 GENERAL MATTERS.

Ohio statutes require the creation of a Fire Insurance Trust Fund. The language explaining the requirements of the fund shall read as follows:

A. A fire insurance trust fund is to be created in the accounting records of the city. It is to be maintained from all other funds of city money, and is to be administered as a trust fund for the purposes described in the remainder of this section. The director of finance shall administer this trust fund for the purposes specified in Revised Code 3929.86.

B. In the event of any loss by fire within the City of Oakwood when the amount of said loss agreed to between the named insured or insureds and the company or companies insuring said loss equals or exceeds 60% of the aggregate limits of liability on all fire policies covering the building or structure insured, the insurance company or companies shall transfer from the insurance proceeds to the director of finance of the city in the aggregate $1,000.00 for each $20,000.00, and each fraction of that amount, of a claim. In the alternative, if at the time of a proof of loss agreed to between the named insured or insureds and the insurance company or companies the named insured or insureds have submitted a contractor's signed estimate of the costs of removing, repairing, or securing the building or other structure, the director of finance shall transfer from the insurance proceeds the amount specified in the estimate. This shall be done in accordance with Revised Code 715.26F.

C. Such transfer of proceeds shall be on a pro rata basis by all companies insuring the building or other structure. The named insured or insureds may submit a contractor's signed estimate of the costs of removing, repairing or securing the building or other structure after the transfer, and the director of finance shall return the amount of the fund in excess of the estimate to the named insured or insureds, provided that the city has not commenced to remove, repair, or secure the building or other structure.

D. Upon receipt of proceeds by the city as authorized by this section and by Revised Code 3929.86, the director of finance shall place the proceeds in the fire insurance trust fund to be used solely as security against the total cost of removing, repairing, or securing incurred by the city pursuant to R.C. 715.261 or 17-109 dealing with emergency measures of this code.

When transferring the funds as required by this section, an insurance company shall provide the director of finance with the name and address of the named insured or insureds; and that director shall contact the named insured or insureds, certify that the proceeds have been received by the City of Oakwood and notify them that the following procedures will be followed:

1. The fund shall be returned to the named insured or insureds when the repairs or removal, or securing of the building or other structure have been completed and the required proof received by the director of finance, if the City of Oakwood has incurred any costs for repairs, removal or securing of the building or other structure, such costs shall be paid from the fund and if excess funds remain, the City of Oakwood shall transfer the remaining funds to the named insured or insureds. Nothing in this code shall be construed to limit the ability of the City of Oakwood to recover any deficiency under Section 715.261 of the Ohio Revised Code.

2. Nothing in this section shall be construed to prohibit the City of Oakwood and the named insured or insureds from entering into an agreement that permits the transfer of funds to the named insured or insureds if some other reasonable disposition of the damaged property has been negotiated.

LEGISLATIVE HISTORY: Amended Ord. 4159, passed 9/21/92; Ord. 4587, passed 7/11/05, effective 8/11/05; Ord. 4621, passed 1/22/07, effective 2/22/07.

## CHAPTER 17-TWO
## DEFINITIONS

17-201 General Comments.
17-201.3 Terms defined in other codes.
17-202 Applied meaning of words and terms.

All the provisions of Chapter 2 of the International Property Maintenance Code (2003) are incorporated by reference so as to apply in the City of Oakwood, except to the extent modified or deleted in this Chapter 17-Two.

### 17-201 GENERAL COMMENTS.

#### 17-201.3 TERMS DEFINED IN OTHER CODES.

This section is amended to the extent that the first reference for meanings of terms not defined shall be to the Zoning Code of the City of Oakwood. Further, the reference in this International Code section to the building, plumbing or mechanical codes listed in Chapter 8 of the International Code is revised not to refer to that Chapter 8 but instead to the building, plumbing or mechanical codes applicable within the city.

### 17-202 APPLIED MEANING OF WORDS AND TERMS.

Some of the definitions in this section are revised. Those that are amended are set forth below:

**Code official**: This is amended to mean the city manager and also any person(s) to whom the city manager may have delegated the responsibility of administering or enforcing all or any portion of this code.

**Condemn**: This is amended to read "to order to be vacated." Similarly, "condemned" shall mean "ordered to be vacated," and "condemnation" shall be changed to "vacation."

**Dwelling unit**: The words in this International Code section, "for one or more persons," are changed to "for one family only, as defined in the zoning code."

**Inoperable Motor Vehicle**: This definition is enacted to state the same meaning as defined under Section 523.01 of Oakwood Codified Ordinances.

The following new definitions are hereby added to this Section 17-202:

**One-family dwelling**: A building containing one dwelling unit, to be occupied by only one family with no more lodgers or boarders than permitted under the Zoning Code of this city.

**Two-family dwelling**: A building containing two dwelling units, each to be occupied by only one family with no more lodgers or boarders than permitted under the Zoning Code of this city.

**Family**: This definition is amended to state that this word has the same meaning as defined in the Zoning Code of this city.

**Plumbing**: This is the plumbing code applicable in the City of Oakwood.

**Unlawful premises** is defined in 17-108

**Unsafe premises** is defined in 17-108.

LEGISLATIVE HISTORY: Amended by Ord. 4587, passed 7/11/05, effective 8/11/05.

## CHAPTER 17-THREE
## EXTERIOR AND INTERIOR MAINTENANCE


17-301 Exterior maintenance.
17-301.3 Vacant structures and land.
17-302 Exterior property (i.e. open space) areas.
17-302.4 Weeds.
17-302.7 Accessory Structures.
17-302.8 Motor Vehicles.
17-302.10 General maintenance standards for exterior property areas.
17-302.11 Obsolete signs.
17-302.12 Owner responsible for unpaved right-of-way.
17-302.13 Screening or removal of outdoor storage.
17-302.14 Diseased and dead trees.
17-302.15 Casualty damage repair.
17-304 Exterior of structures.
17-304.1 General maintenance standards for exterior of structures.
17-304.14 Insect screens.
17-304.15 Doors.
17-304.19 Closing of open areas of buildings.
17-305 Interior of structures.
17-306 Handrails and Guardrails.
17-306.1 General.
17-307 Rubbish and Garbage.
17-307.1 Accumulation of rubbish or garbage.
17-308 Extermination.
17-308.1 Insect and rat harborage.


All the provisions of Chapter 3 of the International Property Maintenance Code (2003) are incorporated by reference so as to apply in the City of Oakwood, except to the extent modified or deleted in this Chapter 17-Three.

The title of Chapter 3 is amended to read as set forth above for this chapter.

### 17-301 EXTERIOR MAINTENANCE.

#### 17-301.3 VACANT STRUCTURES AND LAND.

This International Code section is modified by adding the following additional standard for maintenance of vacant structures and premises thereof and vacant land:

> The level at which they are maintained shall not be lower than the average standards of maintenance generally used by owners of occupied structures and land throughout this city.

### 17-302 EXTERIOR PROPERTY (i.e. OPEN SPACE) AREAS.

#### 17-302.4 WEEDS.

This section is amended to allow designated nature areas and to refer to Ohio statutory provisions for the cutting of weeds. For these purposes, the following language is added at the end of this section:

> This section shall not preclude land designated by the city under Section 551.02 of the Codified Ordinances as a public park nature area or private lot nature area from being maintained in a natural state.

An alternative procedure for the removal of weeds upon order by the city is set forth in Ohio Revised Code 731.51 through 731.54. The city shall have the option of utilizing those statutory procedures or using the provisions of this code or both.

For purposes of this section of the International Code, grass (excluding decorative grasses) of a height of 8 inches or more shall be deemed a weed, as shall all vegetation constituting a threat to the public health, safety or welfare.

**17-302.7 ACCESSORY STRUCTURES.**
All garages, including those attached to the principal structure, shall have operating overhead or horizontal doors to provide security for the property within and in the case of attached garages, for the occupants of the principal structure. (Ord. 4594, passed 10/10/05, effective 11/10/05).

**17-302.8 MOTOR VEHICLES.**
The first sentence of this section is hereby amended to read as follows:

No motor vehicle shall be stored, kept or parked outside on any property unless there is displayed or mounted upon it whatever license is required by Ohio law to permit that vehicle to be used on public streets. For the purpose of this section, the words "motor vehicle" shall have the same meaning as in the Uniform Traffic Laws of the State of Ohio.

**17-302.10 GENERAL MAINTENANCE STANDARDS FOR EXTERIOR PROPERTY AREAS.**
This is an added section to carry forward into this Property Maintenance Code various requirements from the previous Property Maintenance Code of this city.

All exterior property and premises shall be maintained so as not to cause a blighting problem, not to adversely affect the public health or safety, not to adversely affect premises because that decreases property values and in turn lowers the quality of life in this city, but instead shall be maintained so as to have a positive impact on the premises. Further, such work shall be performed in a manner which is in keeping with the standards of maintenance generally used by owners and occupants throughout this city. Leaves must be raked and disposed of so as to avoid unreasonable accumulations. All poisonous weeds or plants shall be destroyed and removed. All land or dirt shall be maintained so as to be covered with vegetation ground cover, except areas covered by or used for:

A. buildings or structures;

B. other substances allowed under the Zoning Code;

C. gardens or flowerbeds;

D. construction of improvements;

E. recreation or outdoor storage uses; or

F. public area nature parks or private lot nature areas designated by the city under Section 551.02.

**17-302.11 OBSOLETE SIGNS.**

This is an added section establishing a requirement for removal of obsolete signs. It reads as follows:

> All obsolete signs shall be removed.

**17-302.12 OWNER RESPONSIBLE FOR UNPAVED RIGHT-OF-WAY.**

This is an added section establishing requirements for maintenance of the tree lawn and unpaved portion of the right-of-way. It reads as follows:

> For the purposes of this Chapter 17-Three, the words "exterior property" and "premises" shall include the strip of land sometimes referred to as the tree lawn (i.e. the portion of right-of-way between the curb, or the paved street if there is no curb, and the sidewalk) and any other unpaved portion of right-of-way which abuts property of an owner. Accordingly, the owner shall be responsible for causing such unpaved right-of-way to comply with the maintenance requirements of this Chapter 17-Three.

**17-302.13 SCREENING OR REMOVAL OF OUTDOOR STORAGE.**

This is an added section establishing requirements for the storage of items in the neighborhood and community business districts and residential districts. It reads as follows:

> In the neighborhood and community business zoning districts, all storage of materials, goods or products shall be within enclosed buildings or shall be effectively screened from view in a manner subject to the approval of the Planning Commission of this city. Off-street parking of operative vehicles shall be an exception to this requirement.
>
> In residential zoning districts, all outdoor storage for a period exceeding 15 continuous days (with any part of such a day being counted as an entire day) shall be enclosed or effectively screened from view in a manner subject to the approval of the Planning Commission. The

storage of such functional items as children's play structures, firewood and operable automobiles and vehicles shall be exempt from this requirement.

If the principal building on any premises has become vacant, portable objects shall not be stored outside on that lot but instead shall be placed within an enclosed structure.

**17-302.14 DISEASED AND DEAD TREES.**

This is an added section establishing requirements for removal of diseased trees. It reads as follows:

Diseased trees are those with any form of decay or vegetation sickness that can be transmitted to other trees, plus those infected with insects to such an extent as to create a nuisance adversely affecting nearby persons or property. Such trees shall be removed immediately or shall be treated or sprayed to eliminate at once the risk of the decay or vegetation sickness being transmitted to other trees and to remove the insect nuisance situation.

The code official shall determine if a dead tree constitutes a safety hazard because of its proximity to the right-of-way, any building or structure, or to persons who use nearby premises. If the code official decides that a tree constitutes such a safety hazard, it shall be removed at the expense of the owner or operator responsible for maintenance of the premises on which it is located.

**17-302.15 CASUALTY DAMAGE REPAIR.**

This is an added section establishing requirements for the repair or demolition of casualty damage. It reads as follows:

Within 30 days after casualty damage to any structure or exterior property, the owner shall have taken the following steps:

A. contracted for repair and restoration of damaged areas and removal of debris; and/or

B. contracted for the demolition (as regulated by the Building Code of this city) and removal of any portions of the premises not to be repaired and restored, and also for removal of debris in connection therewith; and

C. arranged for the contract work to be completed within 60 days from the contract date, except to the extent a delay is caused by

weather, strikes, acts of God or other matters beyond the reasonable control of the owner and contractor.

The code official may extend these time periods to the extent he deems appropriate, but shall not be required to do so. Time is of the essence in repairing damage quickly so as to avoid detrimental impact upon persons and property.

**17-304 EXTERIOR OF STRUCTURES.**

The title of this section of the International Code is amended to read as set forth above.

**17-304.1 GENERAL MAINTENANCE STANDARDS FOR EXTERIOR OF STRUCTURES.**

The title of this International Property Maintenance Code Section 304.1 is amended to read as set forth above. The body of this Section is amended by adding the following material to the end of that section.

Additional standards of maintenance are that the exterior of every structure shall be maintained in high quality, first-class condition so as not to have a negative effect upon the value of the subject property, or upon the value of other property in the neighborhood or the city, not to cause a blighting problem or adversely affect the public health or safety and in accordance with the standards of maintenance generally used by owners and occupants throughout this city.

**17-304.14 INSECT SCREENS.**

The dates during which screens are to be in place shall be the reverse of the dates during which buildings are required by 17-602.1 and 17-602.2 to have heating facilities available. Accordingly, the dates for screens shall be from May 1st to October 31st.

**17-304.15 DOORS.**

The reference to guestrooms is deleted from this International Code section so as to eliminate a requirement that guestroom doors must have locks.

**17-304.19 CLOSING OF OPEN AREAS OF BUILDINGS.**

This is an added section establishing requirements to use fire resistant materials to enclose building openings. It reads as follows:

If any portion of a building formerly open to public view is closed to view through some form of construction materials, the closing shall be made with a fire resistent material which is painted or in some other manner protected from weather and the effects of sunlight.

LEGISLATIVE HISTORY: Amended 4200, passed 5/3/93.

**17-305 INTERIOR OF STRUCTURES.**

The title of this section of the code is revised to read as above.

**17-306 HANDRAILS AND GUARDRAILS.**

**17.306.1 GENERAL.**

This International Code Section is amended by adding the following material to and at the end of the paragraph:

These requirements shall apply to interior but not to exterior stairways, landings and balconies unless they are more than (ten feet) 10' higher than the grade below. The code official may grant an administrative variance from this exterior requirement, on his own motion or on request of the property owner, so as to increase the ten feet (10') height by up to 20%, if the facts are such that the code official makes the same written conclusions of fact that are required by Section 17-111.2 D for variances.

**17-307 RUBBISH AND GARBAGE.**

**17-307.1 ACCUMULATION OF RUBBISH OR GARBAGE.**

This section of the International Code is hereby amended by adding the following material at the end of the paragraph:

The interior of every structure shall be free from any undue accumulation of rubbish or garbage so as to avoid detrimental effects on physical or mental health of occupants or users of the premises and to avoid significant adverse impact upon the value of the property since that would, in turn, negatively impact on neighboring properties and the quality of life throughout not only the neighborhood but the City of Oakwood.

**17-308 EXTERMINATION.**

**17-308.1 INSECT AND RAT HARBORAGE.**

The title of this portion of the city is revised to read as above. This section of the International Code is hereby amended to read as follows:

All structures shall be kept free from undue insect, rat and rodent infestation, so as to avoid detrimental effects on physical or mental health of occupants or users of the premises and to avoid significant adverse impact upon the value of the property since that would, in turn, negatively impact on neighboring properties and the quality of life

throughout not only the neighborhood but the City of Oakwood. All structures in which such accumulations of insects, rats or rodents are found shall be promptly exterminated by procedures accepted within the extermination industry and customarily used in Montgomery County, Ohio, and not contrary to other ordinances of the city or to rules, regulations or orders issued by or for the Oakwood Health District. After extermination, proper precautions shall be taken to prevent reinfestation.

LEGISLATIVE HISTORY: Amended 4159, passed 9/21/92; Amended 4200, passed 5/3/93; Ord. 4587, passed 7/11/05, effective 8/11/05; Ord. 4594, passed 10/10/05, effective 11/10/05.

## CHAPTER 17-FOUR
## LIGHT, VENTILATION AND OCCUPANCY LIMITATIONS

17-401 General.
17-401.3 Alternative devices.
17-402.2 Common Halls and Stairways.
17-404 Occupancy limitations.
17-404.1 Area for sleeping purposes.
17-404.5 Overcrowding.

All the provisions of Chapter 4 of the International Property Maintenance Code (2003) are incorporated by reference so as to apply in the City of Oakwood, except to the extent modified or deleted in this Chapter 17-Four.

### 17-401 GENERAL

#### 17-401.3 ALTERNATIVE DEVICES.

The reference in this section to the International Building Code is changed to refer to the Building Code applicable in the City of Oakwood.

#### 17-402.2 COMMON HALLS AND STAIRWAYS.

This International Code section is modified so that its requirements regarding lighting of common halls and stairways apply only during nighttime hours when artificial light is necessary.

### 17-404 OCCUPANCY LIMITATIONS.

#### 17-404.4.1 AREA FOR SLEEPING PURPOSES.

This section of the International Code is amended to change 70 square feet to 80 square feet.

In addition, it is further amended to change 50 square feet to 60 square feet and to eliminate the corresponding metric measurement.

#### 17-404.5 OVERCROWDING.

The following sentence is hereby added to and at the end of this International Code section so as to continue previous requirements applicable within this city:

> As a requirement superseding the provisions of the minimum occupancy areas described in the table which is part of this section, every dwelling unit shall contain at least 150 square feet of floor space for the first occupant, at least 150 additional square feet of floor space for the second occupant, and at least 100 additional square feet of floor space for each additional occupant.

LEGISLATIVE HISTORY: Amended 4200, passed 5/3/93; Ord. 4587, passed 7/11/05, effective 8/11/05.

## CHAPTER 17-FIVE
## PLUMBING FACILITIES AND FIXTURE REQUIREMENTS, SWIMMING POOL DRAINAGE

17-502.4 Employees' Facilities.
17-502.4.1 Drinking Facilities.
17-508 Swimming pool drainage.
17-508.1 Method of drainage.

All the provisions of Chapter 5 of the International Property Maintenance Code (2003) are incorporated by reference so as to apply in the City of Oakwood, except to the extent modified or deleted in this Chapter 17-Five.

The title of Chapter 5 is amended to read as set forth above for this chapter.

**17-502.4 EMPLOYEES' FACILITIES.**

This International Code section is deleted because it would require a bathroom for many separate shops or places of business which do not now have those facilities.

**17-502.4.1 DRINKING FACILITIES.**

This International Code section is deleted because it would require a drinking facility for many separate shops or places of business which do not now have one.

**17-508 SWIMMING POOL DRAINAGE.**

**17-508.1 METHOD OF DRAINAGE.**

This is an added section establishing requirements for the drainage of swimming pools. It reads as follows:

All existing swimming pools that are not connected to a drainage facility approved by the Oakwood Board of Health or to a drainage facility permissible under the Building Code applicable in this city must be modified or operated so as to dispose of water from those pools in the following manner:

A. Drainage water must be piped to the nearest available storm sewer; or
B. Drainage water must be disposed of on the zoning lot on which the pool is situated and in such a manner that it does not drain onto public property or upon private property owned by another person.

LEGISLATIVE HISTORY: Amended 4200, passed 5/3/93; Ord. 4587, passed 7/11/05, effective 8/11/05.

**CHAPTER 17-SIX**
**MECHANICAL AND ELECTRICAL REQUIREMENTS**

17-605.2 Receptacles

All the provisions of Chapter 6 of the International Property Maintenance Code (2003) are incorporated by reference so as to apply in the City of Oakwood, except to the extent modified or deleted in this Chapter 17-Six.

**17-605.2 RECEPTACLES.**

The requirement of this International section that every habitable space in a dwelling contain at least two separate and remote receptacle outlets is hereby amended to eliminate the "remote" standard. Instead, these outlets are to be either:

1. on separate walls, or
2. if on the same wall, are to be at least twelve feet apart, measured horizontally.

LEGISLATIVE HISTORY: Amended 4200, passed 5/3/93; Ord. 4587, passed 7/11/05, effective 8/11/05

## CHAPTER 17-SEVEN
## FIRE SAFETY REQUIREMENTS


17-701 General requirements.
17-701.1 Scope.
17-702 Means of egress.
17-702.2 Aisles
17-702.3 Locked Doors
17-704 Fire protection systems.
17-704.1 General
17-704.2 Smoke Alarms


All the provisions of Chapter 7 of the International Property Maintenance Code (2003) are incorporated by reference so as to apply in the City of Oakwood, except to the extent modified or deleted in this Chapter 17-Seven.

### 17-701 GENERAL REQUIREMENTS.

#### 17-701.1 SCOPE.

The following sentence is added to and at the end of this International section:

If there is any conflict between the provisions of this Chapter 17-Seven and the Fire Code applicable in the City of Oakwood, the more severe or more restrictive requirements shall apply.

### 17-702 MEANS OF EGRESS

The fire prevention code referred to in this section shall be the code applicable within the City of Oakwood.

#### 17-702.2 AISLES.

The fire prevention code referred to in the exception part of this BOCA section shall be the code applicable within the City of Oakwood.

#### 17-702.3 LOCKED DOORS.

The building code referred to in this section shall be the code applicable within the City of Oakwood.

## 17-704 FIRE PROTECTION SYSTEMS.

### 17-704.1 GENERAL

The fire prevention code referred to in this section should be the code applicable within the City of Oakwood.

### 17-704.2 SMOKE ALARMS.

The building code referred to in this section shall be the code applicable within the City of Oakwood.

LEGISLATIVE HISTORY: Amended by Ord. 4587, passed 7/11/05, effective 8/11/05.

## CHAPTER 17-EIGHT
## RESIDENTIAL RENTAL UNIT INSPECTION

17-800 General matters.
17-800.1 Inspection.
17-800.2 Access to Unit.
17-800.3 Supplementation of Information Filed with County Auditor Pursuant to Ohio Revised Code § 5323.
17-800.4 Notice of violation; time for performance; appeals; variances; inspections and penalties are dealt with in other sections of this code.

---

This chapter is being added so as to carry forward into this Property Maintenance Code requirements from the previous Property Maintenance Code of this city.

### 17-800 GENERAL MATTERS.

#### 17-800.1 INSPECTION

A. As soon as reasonably practicable after the tenants have vacated a dwelling unit, the commissioner of buildings shall cause an inspection of the dwelling unit and any other areas of the premises available for use by the tenants of that dwelling unit (hereinafter called "accessory property") to be made as described in Chapter 17-One of this Property Maintenance Code.

B. At the time notice of change of occupancy of any dwelling unit is given, the owner or operator of the dwelling shall complete an inspection form and schedule an appointment for a time during normal business hours in order for the owner or operator to admit the code official or a representative thereof.

C. The owner or operator of a premise with a rental unit is subject to have the interior of its structures and rental units inspected, at any time, in response to a complaint of an alleged violation of any of the provisions of this Chapter or the provisions of the application of city of Oakwood Codes. For purposes of this provision, a complaint shall be deemed "received" if it is:

1. Submitted in writing;
2. Includes a description of the real estate or dwelling sufficient for identification;
3. Includes the name of the landlord, managing agent, or operator and contact information sufficient to contact the owner, operator, or agent;
4. Includes a clear statement of the alleged violation or condition that leads to the belief that a violation exists.

D. The owner of a rental until shall pay an inspection fee for any interior inspection performed as required by subsection B of this section, except as exempted under E below. The amount of the fee shall initially be $50.00 per unit inspected, but shall subsequently be reviewed and increased if the City Manager determines it necessary to cover the cost of the inspection.

E. No fee shall be required for an interior inspection prompted by a complaint submitted under Subsection C unless violations are noted at which time the property owner will be charged an inspection fee as established by subsection D above.

F. Money collected under this Section shall be used exclusively for rental unit inspection purposes.

**17-800.2 ACCESS TO UNIT**

A. Access by Owner or Operator

Every occupant of a rental unit shall give, upon proper notice, the owner or operator thereof, or his/her agent or employee, access to any part of such rental unit at all reasonable times for the purpose of effecting such maintenance, making such repairs or making such alterations as are necessary to effect compliance with any lawful notice or order issued pursuant to the provisions of the applicable city of Oakwood Codes.

B. Access by Code Official

The Code Official or his/her duly authorized designee is herby authorized to conduct inspections of any rental unit within the city of Oakwood in order to perform the duty of safeguarding the health, safety and welfare of the occupants and the public under the provisions of this chapter. Whenever necessary to make an inspection to enforce any of the provisions of this Chapter or the provisions of the Codified Ordinances of the city of Oakwood or whenever the Code Official or his/her duly authorized designee has probable cause to believe that there exists in any rental unit any condition which makes such rental unit in violation of any of the provisions of this Chapter or the provisions of the applicable city of Oakwood codes, the Code Official or his/her duly authorized designee may enter such rental unit at all reasonable times to inspect the same or to perform any duty imposed upon the Code Official by this Chapter or other applicable provisions of the Codified Ordinances of Oakwood. If such rental unit is occupied, the Code Official shall first make a reasonable effort to locate the occupant, giving at least 24-hour notice of intent to inspect the premises and at least 24-hour notice of right to refuse entry. For purposes of Section 17-106 of the Property Maintenance Code, it shall be a violation of Section 17-800 et seq. to willfully refuse to respond to a notice of intent to inspect the premises. It shall not be a violation of any Ordinance of the city of Oakwood to reasonably refuse to permit entry to a Code Official upon notice. After provision of the 24-hour notice of intent to inspect, the Code Official or his/her duly authorized design shall at such time:

1. Identify himself/herself and his/her position;
2. Explain why entry is sought;

3. Explain that the owner/operator or tenant of an occupied rental unit or other person(s) having charge or control of an unoccupied rental unit may refuse, without penalty, entry without a search warrant;
4. Provide documentation of written notice to the owner/operator giving 7-day notice of deficiency. (Such notice shall not be construed to imply that the repairs need to be completed at that time.)

C Search Warrant

If consent to inspect a rental unit is withheld by any person or persons having the lawful right to exclude, the Code Official or his/her duly authorized designee may apply to a court of competent jurisdiction for a search warrant of the rental unit. No owner/operator or occupant or any person having charge, care or control of a rental unit shall fail or neglect, after presentation of a search warrant, to properly permit entry therein by the Official or his/her duly authorized designee for the purpose of inspection and examination pursuant to this Chapter.

**17-800.3 SUPPLEMENTATION OF INFORMATION FILED WITH COUNTY AUDITOR PURSUANT TO OHIO REVISED CODE § 5323**

Within thirty (30) days of mailing of the city of Oakwood's request for tenant information, the owner of residential rental property shall submit to the code official, on the form provided, the name of each tenant occupying each residential rental property registered with the County Auditor pursuant to Ohio Revised Code § 5323.

**17-800.4 NOTICE OF VIOLATION; TIME FOR PERFORMANCE; APPEALS; VARIANCES; INSPECTIONS AND PENALTIES ARE DEALT WITH IN OTHER SECTIONS OF THIS CODE.**

Other matters regarding notice of violation, time for performance, appeals, variances, inspections, penalties and other aspects of administration are covered in Chapter 17-One of this Property Maintenance Code.

LEGISLATIVE HISTORY: Ord. 3452, passed 10/1/84; Ord. 3465, passed 11/19/84; Ord. 4587, passed 7/11/05, effective 8/11/05; Ord. 4609, passed 7/24/06; Ord. 4616, passed 12/18/06, effective 1/18/07.


CITY OF OAKWOOD
30 PARK AVENUE
OAKWOOD, OHIO 45419-3426
COLUMBUS OH 430
18 SEP '15
PM 4 L
UNITED STATES POSTAGE
PITNEY BOWES
$ 00.48⁵
02 1A
0004355761
SEP 17 2015
MAILED FROM ZIP CODE 45419
Vac
Mr. Caleb M. Musselman
26 Corona Avenue
Oakwood, OH 45419
NIXIE 430 SE 1 0009/23/15
RETURN TO SENDER
VACANT
UNABLE TO FORWARD
BC: 45419340099 *1446-04429-18-38




# City of Oakwood

## Government Administration

### Inspectional Services

September 16, 2015

Mr. Caleb M. Musselman
26 Corona Avenue
Oakwood, OH 45419

Re: 26 Corona Avenue

Dear Mr. Musselman:

It was brought to our attention that you recently purchased the above referenced property located within the city of Oakwood. The city has a codified ordinance that requires that an inspection be performed in advance of the transfer of ownership. Any violations identified during an inspection must then be corrected by the current owner, or by a prospective owner who can assume legal responsibility for the violations. A Certificate of Occupancy is then issued to the current owner, or a conditional certificate in the case of a prospective buyer assuming responsibility, in order for the sale to be completed. Our records indicate, however, that no inspection was performed prior to sale of the above referenced property.

Therefore, please be advised that you are currently in violation of Oakwood Codified Ordinance 17-107.5 (see attached). To assist you in complying with our code, we have attached an Inspection Application which you will need to complete and return along with a $60 inspection fee on or before **September 30, 2015**. Once this information is received by our offices, we can work with you to schedule the required inspection.

Thank you in advance for anticipated cooperation.

Sincerely,

Ethan M. Kroger
Code Enforcement Officer

EMK: rh
enclosures

30 Park Avenue, Oakwood, Ohio 45419
(937) 297-2920 ~ Fax (937) 297-2940
www.oakwoodohio.gov

**CITY OF OAKWOOD**
**INSPECTIONAL SERVICES**
**30 Park Avenue, Oakwood, OH 45419**
**Phone: (937) 297-2920 FAX: (937) 297-2940**
**INSPECTION APPLICATION**

**TYPE OF INSPECTION REQUESTED:**

PRE-SALE/RENTAL
____ 1,2, or 3 Family
____ Apartment/Condominium
____ Business

OTHER
____ Please explain
________________

**ADDRESS OF PROPERTY TO BE INSPECTED** ____________________

Owner's Name (Print) ____________________ Work Phone ____________

Owner's Address ____________________ Home Phone ____________

City/State ____________________ Zip ____________

Owner's Forwarding Address ____________________
____________________ Zip ____________

Anticipated Moving Date ____________________

**AGENT/REALTORS INFORMATION**

Name & Firm (Print) ____________________
Address____________________City/State ____________________ Zip ____________

Phone____________________

**BUYERS INFORMATION**
Prospective Buyer's Name ____________________ Closing Date ____________
Current Mailing Address____________________ Phone ____________
City/State____________________Zip____________

**RENTAL INFORMATION**
If this property is non-owner occupied, or in the event there is a change of tenant, please complete the required Tenant Information Form.

**There is a $60.00 fee for the pre-sale/rental inspection. No inspection will be scheduled until the fee has been paid. If you need to cancel or reschedule an inspection, please call the office at 297-2920 before noon on the day of your appointment. The inspector shall review the property and structures for compliance with the Property Maintenance Code and relevant ordinances. This inspection should be in addition to, and not in lieu of professional inspections.**

Applicant's Signature ____________________

Applicant is: (Check one)
Owner ___ Agent ___ Power of Attorney ____

**FOR OFFICE USE:**

____________________ will meet the Inspector on: ____________________
Date and Time of Inspection

**FEE PAID:** ____________________ **DATE:** ____________________

11/2012

**Kroger, Ethan**

**From:** Peter Davies <daviespetercemes@gmail.com>
**Sent:** Tuesday, September 15, 2015 3:38 PM
**To:** Kroger, Ethan
**Subject:** Re: 2700 Hathaway Road

Mr. Kroger,

Thank you for ensuring a wonderful community is maintained for all residents to enjoy.

I'm pleased to tell you that the pvc pipe has been dealt with.

Please don't hesitate to contact me at any time I can be of assistance you.

Appreciatively,
Peter

On Tuesday, September 15, 2015, Kroger, Ethan <kroger@oakwood.oh.us> wrote:

Mr. Davies,

Thank you very much for your letter and thank you for taking care of the PVC pipe. I appreciate your help in the matter.

If you have any questions or concerns please do not hesitate to contact me.

Thanks again,

Ethan Kroger

Code Enforcement Officer

City of Oakwood

30 Park Avenue

Oakwood, OH 45419

937-297-2920

www.oakwoodohio.gov

--
Best,

Peter

Peter C. Davies
508-681-5451

Moving From:

Chase
2222 Shafor Blvd.
Dayton, OH 45419

To:

CHASE
15280 SONOMA DRIVE
APT 308
FORT MYERS, FL 33908-7300

1-8-16

City of Oakwood
30 Park Ave.
Oakwood, Ohio 45419

Please pardon my lack of stationary, but I am moving & most of all I have is packed or already moved.

I just wanted to inform you of how impressed I was with your Code Enforcement Officer, Ethan Kroger.
He is very polite, professional, neat & clean & explained what I needed (smoke alarm in bedroom.) and when I got them in place he would return to check on the placement.

I wanted you to know that I think he is a real asset to our community.

Sincerely,
Shirley F. Chase

CITY OF OAKWOOD
INSPECTIONAL SERVICES DEPARTMENT
30 Park Avenue
Dayton, OH 45419
Phone: (937) 297-2920
Fax: (937) 297-2940

## PRE-SALE AND CHANGE OF OCCUPANCY INSPECTION PROCEDURE

1. To transfer legal or equitable ownership of any real estate premises within the City of Oakwood, the current owner must first obtain a pre-sale inspection. An inspection must also be conducted upon an occupancy change, but in no case more than once during any twelve month period. Remember, it is an unlawful act to transfer the legal or equitable ownership of premises without having obtained an inspection and without furnishing the prospective new owner a true copy of any conditional occupancy certificate or other notice of violation and obtaining a signed receipt for it.

2. The purpose of the inspection is to insure that all property, buildings and structures are safe, sanitary and fit for occupation and use consistent with the requirements of the Property Maintenance Code.

3. We have outlined the inspection process detailing how the Inspectional Services Department will be working with you to assure compliance with our ordinance.

   a. Inspections will be scheduled once a completed application form has been received in our offices. An inspection is valid for one (1) year from the date of the inspection.

   b. The City Inspector must be met by a responsible party at the time of the inspection.

   c. If no violations are found:

      (1) And, the prospective owner's name is known, an Occupancy Certificate shall be issued, and must be presented to the buyer at the closing.

      (2) If the prospective owner/occupant is not known, the City will advise the present owner or his authorized agent that the Certificate will be issued to the prospective owner and/or occupant when notified of the prospective owner's and/or occupant's identity if that information is forwarded to the City and the closing takes place within one (1) year of the inspection date.

      (3) If the property involved is a rental property and the inspection was conducted as a result of a change of tenant, the Occupancy Certificate shall be issued to the owner in the name of both the owner and the new occupant.

   d. If violations are found, a letter detailing the violations together with a transfer of responsibility agreement form shall be sent to the owner or his representative. Although it is the current owner's responsibility to correct the violations found, the prospective owner may assume such responsibility by completing the transfer of responsibility form. A Conditional Occupancy Certificate will be issued within five (5) working days after receipt of such a written and notarized agreement. An Occupancy

Certificate will be issued once the violations have been corrected and the City has approved the final inspection. **NOTE:** Responsibility for building or zoning permits cannot be transferred to a prospective buyer. Responsibility for correcting rental property violations cannot be transferred to the tenant.

e. If the owner objects to the violations listed, an appeal may be made to the Property Maintenance Board in accordance with language of Codified Ordinance 17-111.1.

4. Legal Basis: Our inspection is based upon requirements outlined in the 2003 International Property Maintenance Code, Third Edition adopted by reference, as the Property Maintenance Code of the City, subject to the modifications set forth in Part Seventeen of the Codified Ordinances.

5. Disclaimer: The applicant, present or prospective owner or any interested party should be aware the inspection will seldom, if ever, reveal latent defects or violations of the Property Maintenance Code which are not readily apparent. Neither should owners nor prospective owners or occupants rely entirely upon our inspection regarding the house, or accessory structures or fixtures being structurally sound. Owners, prospective owners and/or occupants should be made aware that subsequent inspections by specialists might disclose violations or defects that would be apparent to such inspectors with special knowledge or experience in construction or building trades.

6. Advisory Conditions: Current and prospective owners may be advised of conditions that may not constitute a violation of our ordinance at the time of inspection, but should be brought to the attention of the owner or prospective owner before transferring property ownership. These conditions will be noted on correspondence from the department or on an Occupancy Certificate as "advisory conditions".

7. Utility Bills: Before any Occupancy Certificate or Conditional Occupancy Certificate will be issued and before any transfer of property or change of tenant is permitted, all outstanding water and sewer bills must be paid in full. Such Occupancy Certificate or Conditional Occupancy Certificate as would permit transferring property at real estate closing may be withheld if there are outstanding water and sewer debts.

8. Building/Zoning Permits: The release of the Occupancy Certificate or Conditional Occupancy Certificate may be withheld for failure to obtain final approval of existing permits or failure by the present owner to obtain board approval for any improvements that may require such approval.

9. Additional Inspections: The inspection conducted by the City of Oakwood should be in addition to, and not in lieu of professional structural, plumbing, electrical, HVAC, fireplace and termite inspections.

10. Inspection Checklist: Attached is a list of some of the requirements that will be considered as part of the inspection process. This list is not inclusive, but identifies some of the most common violations found during inspections.

**INSPECTION CHECKLIST**

- Sanitation - premises maintained clean, safe, sanitary and free from rubbish and garbage.
- Sidewalks, walkways, driveways, parking, and other impervious areas shall be kept in a proper state of repair and free of hazardous conditions.
- Weeds - Grass shall not exceed 8 inches in height.
- Exhaust vents - steam, vapor, hot air, grease, smoke odors or other gases may not be discharged on abutting or adjacent property.
- All accessory structures must be maintained structurally sound and in good repair.
- Each building shall have a street number displayed in a position easily observed and readable from the public right-of-way; this also includes garages abutting public alleys. All numbers should be at least 3" high.
- Foundation walls shall be kept plumb and free from open cracks.
- Exterior walls shall be kept free of holes, breaks, loose or rotting materials; and maintained weatherproof and properly surface-coated to prevent deterioration.
- Roofs must be sound and tight and not have defects which might admit rain.
- Chimneys shall be maintained in good repair.
- Handrails must be installed on all interior steps with more than four risers.
- All stairs and railings shall be maintained in sound condition and good repair.
- All exterior devices and hardware shall be maintained in good condition.
- The interior of a structure shall be maintained in good repair and in a sanitary condition.
- All interior surfaces shall be kept free of peeling paint, cracked or loose plaster, decayed wood and other defective surface conditions.
- The interior of every structure shall be kept free from any accumulation of rubbish or garbage.
- All structures shall be kept free from insect and rat infestation.
- Hallways and toilet rooms must either have mechanical ventilation or an operable window.
- Living spaces, other than kitchens, shall have a clear ceiling height of 7'4". Hallways, corridors, landing areas, bathrooms and toilet rooms shall have a clear ceiling height of not less than 7'.

- Every sink, lavatory, bathtub or shower, drinking fountain, water closet or other plumbing fixture shall be properly connected to a public water and waste system. All kitchen sinks, lavatories, laundry facilities, bathtubs and showers shall be supplied with hot or tempered and cold running water.

- Water heating facilities shall be properly installed and maintained. We will check the relief valve, check for leaks, and connection to flue.

- A functional smoke detector shall be installed on the ceilings in each sleeping room and floor.

- Drainage of roofs and paved areas, yards and courts, and other open areas on the premises shall not be discharged in a manner that creates a public nuisance. Water may not be directed on, or drain to, a neighbor's property.

- Dwellings shall be provided with heating facilities capable of maintaining a room temp of 65°.

- Fireplaces and solid fuel-burning appurtenances shall be maintained in a safe working condition.

- Every building used for human occupancy shall be provided with an electrical system.

- Every habitable space in a dwelling shall contain at least two separate and remote receptacle outlets.

  a. Every dwelling shall be served by a main service which is not less than 60 ampere, three wire.

  b. All electrical equipment, wiring and appliances shall maintained in a safe and approved manner.

  c. Garbage and rubbish shall be disposed of in a clean and sanitary manner.

- Other miscellaneous conditions and requirements as may be identified by the inspector.

# CITY OF OAKWOOD

An Equal Opportunity Employer

## POSITION DESCRIPTION



**Class Title:** Code Enforcement Officer

| | | | |
|---|---|---|---|
| **Department/Division:** | Health | **Reports To:** | Deputy City Manager |
| **Employment Status:** | Full-time | **Supervises:** | N/A |
| **FLSA Status:** | Exempt | | |

**QUALIFICATIONS:** An example of acceptable qualifications:

Associate's or bachelor's degree and a minimum of two (2) years' or more experience in building trades or inspection, construction, land use, and/or code enforcement.

**LICENSURE OR CERTIFICATION REQUIREMENTS:**

Valid Ohio driver's license
Continuous training to maintain competency in property maintenance, housing, and safety inspections.

**MINIMUM ACCEPTABLE CHARACTERISTICS:**

**Knowledge of:** Ohio Building, Electrical, Plumbing and Residential Codes; International Property Maintenance Code; general construction codes; residential and commercial building inspection techniques; code enforcement procedures; safety practices and procedures; city policies and procedures; city zoning laws and/or regulations; zoning and land use regulations; applicable federal, state, and local laws and regulations.

**Skill in:** use of computer; motor vehicle operation; use of modern office equipment; accurate sketching to scale.

**Ability to:** interpret extensive variety of technical material in books, journals, and manuals; deal with problems involving several variables within familiar context; define problems, collect data, establish facts, and draw valid conclusions; exercise independent judgment and discretion; understand, interpret, and apply laws, rules, or regulations to specific situations; prepare accurate documentation; handle sensitive inquiries from and contacts with officials and general public; perform light manual labor; travel to and gain access to work site; ability to communicate clearly and effectively, both orally and in writing; ability to cope with situations firmly, tactfully, courteously, and with respect for the rights of others.

30% (1) Performs pre-sale and rental inspections to ensure all codes and regulations have been properly followed and met; issues occupancy certificates when all noted code violations have been corrected.

**CITY OF OAKWOOD**
An Equal Opportunity Employer
**POSITION DESCRIPTION**



25% (2) Reviews construction plans in order to ensure compliance with applicable codes and ordinances; approves or denies such plans; conducts inspections of commercial and residential construction sites or upgrading projects in order to ensure compliance with applicable codes and regulations (inspects equipment, materials methods, and construction quality); assists with sidewalk inspections, as requested.

10% (3) Assists contractors and residents with zoning compliance and permits; issues permits when proposed improvements comply with applicable codes and regulations.

10% (4) Receives, responds to, and investigates nuisance problems and complaints or inquiries from citizens, city officials, and others regarding zoning ordinance and safety issues; advises property owners to take corrective action as warranted; performs follow-up inspections to ensure compliance.

10% (5) Performs miscellaneous field inspections for permits issued by the city. Assists with the development of the annual property maintenance violation list and performs follow-up inspections to ensure compliance.

5% (6) Explains, interprets, and provides guidance regarding applicable codes (building, zoning, property maintenance, and their requirements) to architects, developers, property owners, and other interested parties; reviews and evaluates building plans for code compliance and permit issuance.

5% (7) Issues correction notices and citations for code violations; performs follow-up inspections; attends court hearings for code violators and prepares case materials as necessary; testifies in court.

5% (8) Maintains complete and accurate records of activities and inspections; generates reports to City Manager as requested; informs Planning Commission, Board of Zoning Appeals and Property Maintenance Board members of relevant information; may assist in researching and rewriting city codes and policies.

(9) Meets all job safety requirements and all applicable OSHA safety standards that pertain to essential functions.

(10) Demonstrates regular and predictable attendance.

(11) Drafts and distributes a variety of correspondence, memoranda, notices, flyers, brochures, and reports relating to code enforcement issues and actions.

---

**OTHER DUTIES AND RESPONSIBILITIES:**

(12) Assists in the preparation of correspondence to the Planning Commission and Board of Zoning Appeals outlining requests to be presented at upcoming meetings.

(13) Attends Planning Commission, Board of Zoning Appeals, and Property Maintenance Board meetings.

**CITY OF OAKWOOD**
An Equal Opportunity Employer
**POSITION DESCRIPTION**



(14) Works closely and in conjunction with the Property Maintenance Board.

(15) Performs other related duties as required or assigned.

**EQUIPMENT OPERATED:** The following are examples only and are not intended to be all inclusive.

Computer, transit motor vehicles, tape measure, modern office equipment, metal detector, copier, fax machine, cellular phone.

**INHERENTLY HAZARDOUS OR PHYSICALLY DEMANDING WORKING CONDITIONS:**

1. Works in the vicinity of floor or wall openings, elevated platforms, and/or runways.
2. Ascends and/or descends ladders, stairs, or scaffolds.
3. Works in an area in which the means of egress is or can be obstructed.
4. Is exposed to environmental conditions which may result in injury from fumes, odors, dusts, mists, gases, and/or poorly ventilated work areas.
5. Is exposed to possible injury from extremely noisy conditions above 85db.
6. Is exposed to possible injury from hazardous gases, chemicals, flammables, or air contaminants.
7. Is exposed to possible injury due to unclean or unsanitary conditions.
8. Is exposed to possible injury as a result of electrical shock.
9. Is exposed to possible injury as a result of falling from high places.
10. Is exposed to inclement weather conditions.
11. Requires sufficient physical ability and mobility to stand, stoop, reach, bend, kneel, squat, climb ladders, and walk on uneven terrain.

This position description in no manner states or implies that these are the only duties and responsibilities to be performed by the position incumbent. My (employee) signature below signifies that I have reviewed and understand the contents of my position description.

[signature] 6-16-15
(Approval of Appointing Authority) (Date)

[signature] 6-9-15
(Employee Signature) (Date)

DEFS 2839

AN ORDINANCE

BY Mr. Leakas NO. 2579

AMENDING CODIFIED ORDINANCE NO. 1705.05 RELATING TO THE INSPECTION OF PREMISES UNDER THE PROVISIONS OF THE HOUSING CODE OF THIS CITY.

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF OAKWOOD, OHIO:

SECTION 1.

Codified Ordinance No. 1705.05A is hereby amended to read as follows:

"1705.05 Inspection of Premises.

A. Authorization

The Building Commissioner is hereby authorized to make or cause to be made inspections to determine the condition of premises in order to safeguard the public health, safety, morals and welfare and to determine compliance with the provisions of this Code; provided, however, that if the owner or the occupants of the premises object to the entry of the Building Commissioner or his designated representatives a search warrant shall be obtained in conformance with law. Provided, further that the Building Commissioner or his designated representatives, shall be authorized to enter any premises at any reasonable time during normal business hours or at such other time as may be necessary in an emergency in the event that the owner of a building or premises has applied to the Building Commissioner for an occupancy certificate, said application constituting authority and consent for the entry of the Commissioner or his designated representative. Inspections under the Housing Code as authorized by this subsection shall be limited to the provisions of this Code."

SECTION 2.

This Ordinance is hereby declared to be an emergency measure and as such shall take effect immediately on the basis that it is necessary to require a search warrant if owners or occupants object to inspections, unless the owner has applied for an occupancy certificate, for the immediate preservation of the public peace, health, morals, and safety of the City.

PASSED BY COUNCIL this 16th day of September, 1968.

[signature]
MAYOR

ATTEST:

[signature]
CLERK OF COUNCIL

To the Clerk:

Publish by inclusion in the Codified Ordinances of this City.

[signature]
JAMES R. GOULD, CITY ATTORNEY

I, the undersigned, Clerk of Council of the City of Oakwood in Montgomery County, Ohio, hereby certify that the foregoing is a true and correct copy of Ordinance/~~Resolution~~ No. 2579 passed by the Council of the City of Oakwood, on the 16th day of September, 1968

[signature]
CLERK OF COUNCIL

I, the undersigned, Clerk of Council of the City of Oakwood in Montgomery County, Ohio, hereby certify that the foregoing is a true and correct copy of Ordinance/~~Resolution~~ No. 3253 passed by the Council of the City of Oakwood, on the 5th day of April, 1982

Lori Stacel
CLERK OF COUNCIL

AN ORDINANCE

BY MR. STORMS NO 3253

TO AMEND THE CODIFIED HOUSING CODE ORDINANCES OF THE CITY OF OAKWOOD TO REMOVE ANY CRIMINAL SANCTION FROM AN OWNER OF PREMISES OBJECTING TO A WARRANTLESS INSPECTION OF HIS HOUSE, AND TO DECLARE AN EMERGENCY.

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF OAKWOOD, OHIO:

SECTION I.

The second sentence of Section 1705.05 (a), of the Housing Code, is hereby amended to read as follows, with words deleted being typed with dashes through them (~~words-deleted~~) and with new language being typed in CAPITAL LETTERS:

"~~Provided,-further-that~~ The Building Commissioner, or his designated representatives, shall be authorized to enter any premises at any reasonable time during normal business hours, or at such other time as may be necessary in an emergency, in the event that the owner of a building or premises has applied to the Building Commissioner for an occupancy certificate, ON THE BASIS THAT such AN application ~~constituting~~ CONSTITUTES authority and consent for the entry of the Commissioner or his designated representative. PROVIDED, HOWEVER, THAT IF THE OWNER OR THE OCCUPANTS OF THE PREMISES OBJECT TO SUCH ENTRY WITHOUT A WARRANT, A SEARCH WARRANT SHALL BE OBTAINED IN CONFORMANCE WITH LAW. Inspections under the Housing Code as authorized by this subsection shall be limited to the provisions of this Code."

SECTION II.

The title of paragraph (a) of Section 1705.05 is changed to read as follows:

"(a) Authorization/Search Warrants."

SECTION III.

The title of paragraph (b) of Section 1705.05 is changed to correct the spelling of the word "identification." This title is changed to read as follows:

"(b) Identification of Inspectors."

SECTION IV.

This Ordinance is hereby declared to be an emergency measure and as such shall take effect immediately.

PASSED BY COUNCIL OF THE CITY OF OAKWOOD, this 5th day of April, 1982.

Carl F Riedel [signature]
Mayor

ATTEST:

Cathy L. Dewire [signature]
Clerk of Council

TO THE CLERK:

Publish by inclusion in the Codified Ordinances of this City.

[signature]
James R. Gould, City Attorney

# ORDINANCE

BY MRS. COOK NO. 4145

TO ENACT A REVISED CODE OF GENERAL ORDINANCES FOR THE CITY OF OAKWOOD, OHIO SO AS TO RECODIFY, RENUMBER AND REARRANGE SECTIONS OF THE EXISTING ORDINANCES, TO ENACT NEW MATTER REFLECTING REVISIONS IN STATE STATUTES AND MAKING OTHER CHANGES, TO REVISE LANGUAGE, STYLE, HEADINGS AND PARAGRAPHING INTO MORE READABLE FORM, TO ADOPT THE BOCA PROPERTY MAINTENANCE CODE, TO REPEAL CONFLICTING ORDINANCES, AND TO DECLARE AN EMERGENCY.

WHEREAS, the first codification of general and permanent ordinances of the City of Oakwood was enacted and adopted on March 6, 1968, so as to publish those ordinances in book form; and

WHEREAS, changes in many state statutes over the years have made it necessary and appropriate for the city to revise, supplement and recodify its general and permanent ordinances; and

WHEREAS, to include state law changes in the new codification it has been necessary or desirable to revise many portions of the codified ordinances; and new matter has been added for that purpose, to make other changes, and to amend administrative procedures to make them less legalistic and easier to use; and

WHEREAS, many parts of the previous codification have now been rewritten so as to revise style, wording, headings, paragraphing, arrangement and numbering; and

WHEREAS, the Planning Commission has considered and recommended adoption of revised zoning text language as part of this new codification; the amended zoning language has been prepared to eliminate internal conflicts, to improve the readability by making the changes referred to above as to style, wording, headings, paragraphing, etc., and to add new language regarding the purpose clause, burden of proof, PUD plans, fence requirements in the business and residential districts and other miscellaneous matters; and as part of the adoption of the new codification the City Council has held a public hearing upon the rewritten zoning text; and

WHEREAS, the new fire code and new building code are included in this codification as is the BOCA (Building Officials and Code Administrators) national property maintenance code; and

WHEREAS, this revised code of general ordinances will make use of the new codification easier in that provision is made for indexes, cross references, tables, numbering and other matters to be changed, added, and kept up to date from time to time without necessity of future legislation;

NOW, THEREFORE, BE IT ORDAINED BY THE COUNCIL OF THE CITY OF OAKWOOD, MONTGOMERY COUNTY, OHIO, THAT:

SECTION I.

The general and permanent ordinances of this city, as revised, rearranged, renumbered, supplemented by new matter, and consolidated into component titles, codes, chapters and sections known as the 1992 Codified Ordinances, are incorporated herein by reference and are approved, adopted and enacted as the codified ordinances of this city.

Section 3.05 of the charter of this city exercises the power of local self government (under Article XVIII, Section 7 of the Ohio Constitution) so as to supersede statutory requirements as to publication of ordinances. It provides that, in lieu of the statutory procedures of publishing a mere summary of any new ordinance in a newspaper, such new legislation may be published not in summary form but by setting it forth in full in a code or book of revised ordinances which is made available to the public in the office of Clerk of Council.

Acting under that charter language, the council declares that this newly adopted code of general ordinances shall be assembled and published in book form with at least one copy of these 1992 Codified Ordinances being made available to the public in the office of the Clerk of Council.

SECTION II.

These newly enacted codified ordinances may be amended at any time. When any new legislation is adopted in such form as to indicate the intention of the City Council to make it a part of the 1992 Codified Ordinances, it shall be incorporated into the codification as an amendment and thereafter deemed a part of the codified ordinances. Accordingly, any future reference to the codified ordinances of this city shall be understood and construed as including the revised code of general ordinances hereby enacted together with any and all such amendments.

In addition to the master copy which is to be supplemented by amendments, the Clerk shall keep the original version of the 1992 Codified Ordinances without amending or supplementing it. Further, the clerk shall keep (in such manner as she determines to be available easily for reference) a dated copy of all future amendments, separate and apart from the updated master book itself. All such amendments shall not only describe new material being added to the codified ordinances but shall also describe or refer to any portions of the codified ordinances to be deleted. Finally, the Clerk shall also keep (in such manner as she determines to be available easily for reference) a complete copy of any language being deleted by subsequent amendments.

SECTION III.

Any and all prior legislation which conflicts with or is inconsistent with any provision of this 1992 revised code of general ordinances is hereby repealed, but such repeal shall not affect the following matters:

A. Legislation of a special or temporary nature not intended to be included in the codification;

B. Any right or liability accrued or incurred under any legislation prior to the effective date of this new codification, or an action or proceeding for the enforcement of such right or liability. For example, enactment of the new codification shall not be construed to relieve any person from punishment for an act committed in violation of an earlier legislative prohibition nor to affect prosecution for such an act. For any such purposes, prior legislation shall be deemed to continue in full force until such prosecution is completed, the punishment imposed, and any appeal time has expired.

C. The grant or creation of a franchise, license, right, easement or privilege.

D. The purchase, sale, lease or transfer of property.

E. Appropriation or expenditure of money or promise or guarantee of payment.

F. Assumption of any contract or obligation by the city.

G. The issuance and delivery of any bonds, obligations or other instruments of indebtedness.

H. The levy or imposition of taxes, assessments or charges.

I. The establishment, naming, vacating or grade level change of any street or public way.

J. The dedication of property or plat approval.

K. The annexation or detachment of territory.

L. Any legislation enacted subsequent to the cut-off date established by the codifier for various codes or chapters within the codified ordinances.

Section IV.

In order to facilitate administration of the city and the usual, daily operation of municipal departments and to avoid practical and legal entanglements, it is necessary that this ordinance and the new codification take effect as quickly as possible. Accordingly, for those reasons and also on the basis of protection of the public peace, health, safety and welfare, this ordinance is declared to be an emergency measure and as such shall take effect immediately upon its adoption. This ordinance itself shall be deemed to constitute a part of the codification and shall be published by inclusion in the new book of codified ordinances.

PASSED BY THE COUNCIL OF THE CITY OF OAKWOOD THIS 29th day of July, 1992.

[signature]
Mayor

ATTEST:

Cathy D. Blum
Clerk of Council

TO THE CLERK:

Publish by inclusion in the codified ordinances of this city.

As an additional form of notification not required by the city charter and therefore effected as a policy adopted by the City Council and not as a legal requirement, the following summary of this ordinance shall be published one time in a newspaper of general circulation in this city:

James R. Gould
James R. Gould, City Attorney

LEGAL NOTICE

Ordinance No. 4145 was passed by the Council of the City of Oakwood, Ohio on the 29th day of July, 1992, as an emergency measure to take effect immediately. It was adopted to enact a revised code of general ordinances for the City of Oakwood, Ohio so as to recodify, renumber and rearrange sections of the existing ordinances, to enact new matter reflecting revisions in state statutes and making other changes, to revise language, style, headings and paragraphing into more readable form, to adopt the BOCA property maintenance code, and to repeal conflicting ordinances.

Cathy D. Blum
Clerk of Council

CERTIFICATION OF PUBLICATION

I, Cathy D. Blum, Clerk of Council of the City of Oakwood, State of Ohio, do hereby certify that the foregoing summary of the foregoing Ordinance was duly published in the Kettering-Oakwood Times, a newspaper of general circulation in said City of Oakwood, and that said publication occurred on the following date: AUGUST 1, 1992

Cathy D. Blum
CATHY D. BLUM, CLERK OF COUNCIL

I, the undersigned, Clerk of Council of the City of Oakwood in Montgomery County, Ohio, hereby certify that the foregoing is a true and correct copy of Ordinance/~~Resolution~~ No. 4145 passed by the Council of the City of Oakwood, on the 29th day of July, 1992

Lori Stacal
CLERK OF COUNCIL