# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JASON THOMPSON and | : | Case No. 3:16-cv-169 |
| 2408 HILLVIEW, LLC, | : | |
| | : | Judge Thomas M. Rose |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF OAKWOOD, OHIO, and | : | |
| ETHAN KROGER, | : | |
| | : | |
| Defendants. | : | |

---

### ENTRY AND ORDER GRANTING PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT (DOC. 52), GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 50), AND GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (DOC. 18)

---

From approximately 1992 until July 2016 (shortly after this lawsuit was filed), a municipal ordinance in the City of Oakwood, Ohio made it unlawful to transfer ownership of any real estate, or change a tenant, without having obtained a "pre-sale inspection" of the property under the municipal code. (Doc. 28-9, Oakwood Codified Ordinances, § 17, at PageID # 3112-3152.) The pre-sale inspection program required the property owner to complete an application, schedule and appear for an inspection of the property with the code official, pay a $60 fee, correct or otherwise address identified violations of the city's fire, zoning, building, and property maintenance codes, and pay all outstanding water and sewer bills for the property in full, in order to obtain a

"certificate of occupancy" authorizing the property's sale. Violation of the pre-sale inspection requirement was punishable as a misdemeanor. (Doc. 28-9 at ¶¶ 5, 8-9.)

Plaintiffs own and have sold residential homes in Oakwood. They brought this action under 42 U.S.C. § 1983 against Oakwood and Ethan Kroger, one of its code enforcement officers, for allegedly infringing their constitutional rights by requiring them to submit to warrantless searches or risk criminal punishment before permitting them to sell their homes. Plaintiffs seek to represent a class of similarly situated individuals who sold real estate in Oakwood and were "coerced into paying pre-sale inspection fees." (Doc. 12 at ¶ 112.)

This case is before the Court on Plaintiffs' Motion for Class Certification (Doc. 18) and Amended Motion for Partial Summary Judgment (Doc. 52) and Defendants' Motion for Summary Judgment (Doc. 50). Typically, the Court would decide a motion for class certification before a dispositive motion, but, in this case, the resolution of the parties' motions for summary judgment simplifies the issues relevant to whether a class should be certified. *See Thompson v. Cty. of Medina, Oh.*, 29 F.3d 238, 241 (6th Cir. 1994) (court has discretion to decide motion for summary judgment before motion to certify class). In this Order, the Court therefore rules on the parties' motions for summary judgment before turning to the question of whether class certification is proper.

## I.   BACKGROUND

### A. Background[1]

Oakwood is a residential suburb just south of Dayton, Ohio. Due to the age of Oakwood's housing stock, some of which dates back to the 1920s and 1930s, Oakwood actively encourages residents to maintain their homes, including through the pre-sale inspection program at issue in this lawsuit. (Doc. 26-1 at PAGEID # 312; Doc. 25-2, PAGEID # 217-218; Doc. 25-3, PAGEID#280-281; Doc. 25-4, PAGEID # 292.) Oakwood credits its rising home values and the "scant number of fire and structural events occurring annually" within the city at least in part to its pre-sale inspection program. (Doc. 26-1 at PAGEID # 312; Doc. 28-8 at PAGEID # 3011-311; Doc. 26-1, PAGEID # 312; Doc. 28-8 at PAGEID # 2947-3010; Doc. 25-2 at PAGEID # 218; Doc. 25-3, PAGEID # 281; Doc. 25-4, PAGEID # 292.)

From 1968 until 1992, Oakwood's pre-sale inspection ordinance included a provision that required the city's building commissioner to obtain a search warrant if the owner or occupant of the premises objected to the inspection. (Doc. 28-9 at PAGEID # 3166); Doc. 28-9 at PAGEID # 3167.) In 1992, the City hired an outside agency to revise its entire Codified Ordinances, including the Property Maintenance Code that contains the pre-sale inspection program. (Doc. 28-9 at PAGEID # 3168-3170.) The revised pre-sale inspection program omitted the warrant provision present in the former version. Oakwood claims that the omission was inadvertent and it had no intention of discontinuing its earlier compliance with *Wilson v. City of Cincinnati*, 46 Ohio St. 2d 138

---

[1] The facts in this section are undisputed unless otherwise noted.

(1976). (Doc. 50-1 at ¶ 8.) In *Wilson*, the Supreme Court of Ohio held that "where a municipal ordinance requires the owner of real property to tender a certificate of housing inspection to a prospective buyer, and such certificate may be obtained only by allowing a warrantless inspection of the property, the imposition of a criminal penalty upon the owner's failure to tender the certificate violates the owner's rights under the Fourth Amendment to the United States Constitution." *Id.* at 145.

Plaintiffs challenge the pre-sale inspection program effective after the 1992 revision to Oakwood's Codified Ordinances. The program at issue provided, under Oakwood Codified Ordinance § 17-107.5, that "it shall be unlawful for the owner of any real estate premises to transfer legal or equitable ownership of that premises, or change tenant, without having obtained a pre-sale inspection of it under this code." (Doc. 28-9 at PAGEID# 3120-3121.) Upon completion of the inspection and other requirements, a real estate owner could obtain a "certificate of occupancy" from Oakwood. (*Id.*) Issuance of the certificate of occupancy was important because, under § 17-107.8, it was unlawful for a new owner or tenant to occupy or use any premises "without having obtained from the code official or the previous owner a valid certificate of occupancy for that premises." In addition, under § 17-106.4, an owner who failed to comply with the pre-sale inspection requirement or occupied a premises without having first obtained a certificate of occupancy was guilty of a minor misdemeanor—a criminal offense. (*Id.* at PAGEID# 3117.)

Plaintiffs filed this lawsuit on May 4, 2016. About two months later, on July 5, 2016, Oakwood passed an Emergency Ordinance that repealed the pre-sale inspection

program enacted in 1992 and replaced it with a new program. The new program retains many of the same procedures, but adds an administrative warrant procedure for residential and business inspections and clarifies that assertion of one's rights under the Fourth Amendment is not grounds for criminal prosecution. (Doc. #23-1 at PAGEID # 190-193.) Plaintiffs do not challenge the constitutionality of the amended ordinance. (Doc. 37.)

Plaintiffs are Jason Thompson ("Thompson") and 2408 Hillview LLC ("the LLC"). The LLC was formed by Thompson and his partner Timothy Gwin ("Gwin") for the purpose of buying and selling houses. (Doc. 45 at PAGEID # 3326-27; Doc. 46, PAGEID # 3672.) As alleged in the Amended Complaint, the LLC owned two homes in Oakwood, one at 421 Hadley Avenue and the other at 2408 Hillview Avenue. (Doc. #46, PAGEID # 3673.) The LLC sold the property at 421 Hadley Avenue on April 25, 2016, but continues to own the property at 2408 Hillview Avenue—or at least owned it as of the briefing on the motions before the Court.  Consequently, only the property at 421 Hadley Avenue is at issue in this case.

The LLC, through Gwin, engaged Jill Aldineh of Re/Max ("Aldineh") to act as the seller's agent in the sale of the 421 Hadley Avenue property. (*Id*.) Gwin signed an agency agreement with Aldineh, which required the property owner to make application for any required housing inspection and to furnish Aldineh with a copy of the resulting certificate of occupancy. (Doc. 25-2 at PAGEID # 216, 229.) Aldineh paid the $60 application fee and scheduled an inspection of the property. (*Id*. at PAGEID # 216.)

On April 12, 2016, Defendant Ethan Kroger ("Kroger"), an Oakwood code enforcement officer, conducted the inspection of the 421 Hadley Avenue property. (Doc. 25-2 at ¶ 7.) Another agent from Re/Max attended the inspection on the LLC's behalf. (Doc. 50-2 at ¶ 6.) Gwin testified he was unaware that Aldineh had paid the $60 fee or had the inspection done. (Doc. 45 at PAGEID # 3350.) Thompson, after learning the pre-sale inspection occurred, demanded that Oakwood refund Aldineh the $60 fee so that he could pay it instead—which he did. (Doc. 46 at PAGEID # 3685.)

The April 12, 2016 inspection revealed some issues that needed to be addressed to comply with Oakwood's Building Code. (Doc. 25-2 at PAGEID # 217.) They were quickly resolved and a final inspection for 421 Hadley Avenue was scheduled for April 14, 2016. (Doc. 45 at PAGEID # 3344.) Gwin attended the final inspection, which Kroger again conducted. Kroger asked Gwin for permission to inspect the garage, which was accessible during the first inspection. (*Id*. at PAGEID # 3338-3339.) Gwin declined. Kroger therefore did not inspect the garage, but nevertheless processed the LLC's application for approval. (*Id*. at PAGEID#3339-3340.) The LLC then completed the sale of 421 Hadley Avenue. (Doc. 45 at PAGEID # 3345.)

Oakwood's Property Maintenance Code contains an administrative appeal procedure for property owners to challenge any decision or order of a code official. (Doc. 26-1 at PAGEID # 314; Doc. 28-9 at PAGEID # 3112-3152.) No Oakwood property owner, including Plaintiffs, has filed an administrative appeal challenging any decision or order of an Oakwood code official in the enforcement of the pre-sale inspection ordinance at issue. (*Id*.; *see also* Doc. 26-1 at PAGEID # 312-313.) The City has never

denied a property owner an occupancy permit. (Doc 26-1 at PAGEID # 314.) Its practice and policy is to work with sellers and buyers as they work to maintain the aging housing stock. (Doc. 26-1 at PAGEID # 307-314; Doc. 28-9 at PAGEID # 3119-3121; Doc. 25-2, PAGEID # 217; Doc. 25-3 at PAGEID # 280-281; Doc. 25-4 at PAGEID # 292.)

Since the program's inception in 1968, Oakwood has never cited a property owner for failure to comply with the pre-sale inspection requirement. (Doc 26-1 at PAGEID # 308.) Oakwood has, however, informed at least two property owners—specifically Thompson and Gwin—that failure to have a pre-sale inspection was a misdemeanor. (Doc. 1-5 at PAGEID # 34; Doc. 65-1 at PAGEID # 4271.) Aside from Plaintiffs, Oakwood is not aware of any property owner objecting to the pre-sale inspection program. (Doc. 26-1 at PAGEID # 309.)

### B. Plaintiffs' Amended Complaint

On May 4, 2016, Plaintiffs brought this action seeking a declaratory judgment that Oakwood's pre-sale inspection requirement was unconstitutional on its face, an injunction against enforcement of the ordinance containing that requirement, and restitution of the $60 fee that Plaintiffs paid pursuant to the ordinance. (Doc. 1.) On the next day, Plaintiffs filed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction. (Doc. 2.) At the hearing on the TRO, the parties agreed on the terms of a preliminary injunction that would require Oakwood to suspend enforcement of certain provisions of its pre-sale inspection ordinance. On May 24, 2016, the Court entered the parties' stipulated preliminary injunction. (Doc. 15.)

On May 12, 2016, Plaintiffs filed an Amended Complaint, which added class allegations. (Doc. 12.) Plaintiffs assert two claims against Oakwood and Kroger under 42 U.S.C. § 1983 for alleged violations of their rights under the Fourth, Fifth, and Fourteenth Amendments. (*Id.* at ¶¶ 71-98.) As to each § 1983 claim, Plaintiffs allege that Oakwood's ordinance was unconstitutional on its face and as applied. Plaintiffs also bring a claim against Oakwood for unjust enrichment and restitution of the $60 paid pursuant to the pre-sale inspection program. (*Id.* at ¶¶ 99-110.)

Oakwood's amendment of its Oakwood's Codified Ordinances effectively moots Plaintiffs' request for a permanent injunction. Plaintiffs also seek a declaratory judgment that Oakwood's prior pre-sale inspection program (effective 1992-2016) was unconstitutional on its face, actual and nominal damages, and restitution of the $60 fee paid for pre-sale inspections.

Plaintiffs have moved for certification of the following class:

> All individuals and businesses that have (1) sold houses within the City of Oakwood since May 25, 2010; and (2) paid pre-sale inspection fees to the City of Oakwood in conjunction with the sale of their houses.

(Doc. 12 at ¶ 15; Doc. 18 at 1.) Defendants oppose class certification on a number of grounds, which are discussed below. The most significant issues raised by Defendants in opposition to class certification are resolved by the Court's ruling on the parties' motions for summary judgment.

## II.   THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

### A. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule

56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affirmations are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party, however, is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id*.

In ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091 (1990). Thus, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

B. **Analysis**

Plaintiffs seek partial summary judgment only as to Oakwood's liability on their § 1983 claims and unjust enrichment/restitution claim. (Doc. 52 at 1.) Plaintiffs specifically request, as to the § 1983 claims, that the Court enter a declaratory judgment that Oakwood's pre-sale inspection program was unconstitutional, both facially and as applied to Plaintiffs, under the Fourth, Fifth and Fourteenth Amendments. As to the unjust enrichment claim, Plaintiffs request a declaratory judgment that Oakwood was unjustly enriched by its collection of fees for its pre-sale inspection program.[2] Plaintiffs do not seek summary judgment on the claims asserted on behalf of the prospective class or any of their claims against Kroger.

Defendants seek summary judgment in their favor on all of Plaintiffs' claims, with the exception of the class claims. (Defendants indicate that they might file a dispositive motion directed to the class claims if a class is certified.) Defendants first argue that Kroger is immune from civil liability on Plaintiff's § 1983 claims under the doctrine of qualified immunity. They argue that Oakwood is entitled to summary judgment on Plaintiffs' § 1983 claims because its amended ordinance moots Plaintiffs' claim and it did not commit any constitutional violation. Defendants further argue that

---

[2] Plaintiffs also request a declaratory judgment that certain fees and "monetary assessments" relating to the pre-sale inspection program should be refunded and an order directing Oakwood to return the pre-sale inspection fees paid by Plaintiffs. The Court bifurcated this case, however, between issues relating to liability and those relating to damages. (Doc. 20.) Plaintiffs' requests relating to damages are not before the Court.

the unjust enrichment/restitution claim fails because the doctrine of unjust enrichment does not apply to political subdivisions.

### i.  <u>Plaintiffs' Claims Under 28 U.S.C. § 1983</u>

Section 1983 provides a civil cause of action for persons "who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, 378 F.3d 566, 576 (6th Cir. 2004). Plaintiffs claim that Defendants violated the Fourth Amendment by mandating warrantless, coerced searches of Plaintiffs' property. They further allege that Defendants violated the unconstitutional conditions doctrine—arising under the Fifth and Fourteenth Amendments—by withholding an occupancy certificate from Plaintiffs unless they agreed to an unconstitutional search.

### 1.  <u>The Fourth Amendment Claim</u>

The Fourth Amendment  provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Mun. Court*, 387 U.S. 523, 527 (1967). The Supreme Court has repeatedly held that "searches conducted outside the judicial process, without prior approval by a judge or a magistrate judge, are per se unreasonable subject only to a few specifically established and well-delineated

exceptions." *City of Los Angeles v. Patel*, _ U.S. _, 135 S. Ct. 2443, 2452 (2015); *see also Camara*, 387 U.S. at 528-29 ("except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant").

In *Camara*, the Supreme Court held unconstitutional a San Francisco building ordinance that authorized warrantless, unconsented inspections to enforce the city's housing code. As here, failure to consent to the warrantless searches was punishable as a misdemeanor. *Camara*, 387 U.S. at 527 n.2. The plaintiff was an apartment building tenant who had refused an annual inspection and sought a writ prohibiting his prosecution in municipal court on a criminal charge of violating city housing code.

The Supreme Court in *Camara* first found that administrative searches are significant intrusions upon interests protected by the Fourth Amendment and "when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual." *Id*. at 534. It reasoned:

> Under the present system, when the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the full limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization. These are questions which may be reviewed by a neutral magistrate without any reassessment of the basic agency decision to canvass an area. Yet, only by refusing entry and risking a criminal conviction can the occupant at present challenge the inspector's decision to search. ... The practical effect of this system is to leave the occupant subject to the discretion of the official in the field. This is precisely the discretion to invade private property which we have consistently circumscribed by a requirement that a disinterested party warrant the need to search.... We simply cannot say that the protections provided by the warrant procedure are not needed in this context; broad statutory safeguards are no substitute for

individualized review, particularly when those safeguards may only be invoked at the risk of a criminal penalty.

*Id*. at 533. The Court then held that the tenant had a constitutional right to insist that the administrative search be supported by a warrant and that he could not constitutionally be convicted for refusing to consent to the inspection. *Id*. at 540.

More recently, Judge Susan Dlott of the Southern District of Ohio addressed challenges to a very similar municipal ordinance under the Fourth, Fifth, and Fourteenth Amendments in *Baker v. City of Portsmouth*, No. 1: 14CV5L2, 2015 WL 5822659 (S.D. Ohio Oct. 1, 2015). The plaintiffs in *Baker* owned rental properties in Portsmouth, Ohio. *Id.* at *2. Under Portsmouth's Rental Dwelling Code, plaintiffs were required to apply to the Portsmouth Board of Health for a rental dwelling permit in order to rent their property. *Id*. at *1. A city official approved or denied the permit based on an inspection of the property. *Id*. Portsmouth charged a fee for issuance and renewal of the permits. *Id*.

The plaintiffs and defendants each moved for summary judgment. Plaintiffs alleged that Portsmouth's code violated their Fourth Amendment rights by mandating warrantless inspections of their properties without probable cause and violated their rights under the Fifth and Fourteenth Amendments (under the unconstitutional conditions doctrine) because it required them to forfeit their Fourth Amendment rights in order to rent out their properties. *Id.* After surveying the relevant caselaw, Judge Dlott concluded that "unless a recognized exception to the warrant requirement

applies, the Code's failure to include a warrant provision violates the Fourth Amendment." *Id.* at *5.

Judge Dlott reviewed many of the same cases cited by the parties in this case, including *Sokolov v. Village of Freeport*, 52 N.Y.2d 341, 346, 420 N.E.2d 55 (1981) and *Wilson v. City of Cincinnati*, 346 N.E. 2d 666 (Ohio 1976). Rather than repeat the same exercise here, the Court agrees with Judge Dlott's analysis and reaches the same conclusion as to Oakwood's pre-sale inspection ordinance. Namely, the Supreme Court's decision in *Camara* and its progeny establish that a municipality violates the Fourth Amendment when it requires a property owner to consent to a warrantless inspection of their property or face a criminal penalty, unless a valid exception to the warrant requirement exists.

Oakwood makes four arguments against the entry of summary judgment in Plaintiffs' favor on the Fourth Amendment claim. First, Oakwood argues that Plaintiffs' claims were mooted when Oakwood amended its ordinance. (Doc. 56 at 4-5.) Second, it argues that it did not commit any constitutional violation because Plaintiffs consented, through their real estate agent, to the pre-sale inspection of their property. Third, Oakwood argues that Plaintiffs rely on inadmissible evidence and fail to address the history of the pre-sale inspection ordinance. (Doc. 56 at 3-4.) Fourth, Oakwood claims that Kroger, its code enforcement officer, did not commit any constitutional violation and, even if he did, he is entitled to qualified immunity. The Court considers each of these arguments in turn.

The fact that Oakwood amended its ordinance—and that Plaintiffs do not challenge the amended ordinance—does not moot Plaintiffs' claims. Plaintiffs originally sought injunctive relief and damages. Oakwood's amended ordinance provided Plaintiffs the injunctive relief they sought; as a result, that portion of Plaintiffs' claims is indeed moot. Their claims for actual and nominal damages relating to the prior ordinance, however, are not.

Mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, n. 22 (1997) (citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting *Monaghan, Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973))). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Gottfried v. Med. Planning Servs., Inc.*, 280 F.3d 684, 691 (6th Cir. 2002) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1978)). Even if a § 1983 claim for injunctive relief is mooted by a defendant's change in conduct, the case may still proceed if there is also a claim for damages. *Gottfried*, 280 F.3d at 691; *see also Ermold v. Davis*, 855 F.3d 715, 719 (6th Cir. 2017) ("Damages claims 'are retrospective in nature—they compensate for past harm. By definition, then, such claims cannot be moot.'") (quoting *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 622 (3d Cir. 2013)). The claim for damages, however, "must not be 'so insubstantial or so clearly foreclosed by prior decisions that th[e] case may not proceed.'" *Id.* (quoting *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 9

(1978)). The Sixth Circuit interpreted this standard to mean that a plaintiff must have a "*viable* claim for damages" to proceed with a § 1983 case, where the defendant has mooted a claim for injunctive relief. *Id.*

Oakwood argues that a claim for nominal damages alone cannot overcome the mootness doctrine. Plaintiffs counter that a claim for nominal damages is sufficient, but, in any event, they also allege actual damages. The Court agrees that Plaintiffs allege both nominal and actual damages, therefore it need not resolve whether a claim for nominal damages alone saves this case from the mootness doctrine. Plaintiffs claim to have suffered actual damages when they were allegedly coerced into consenting to a warrantless inspection and paying a $60 fee for that service.[3]

Oakwood appears to rely on the Sixth Circuit's statement in *Gottfried* that a remaining claim for damages does not overcome the mootness doctrine if it is "so insubstantial or so clearly foreclosed by prior decisions that th[e] case may not proceed." *Gottfried*, 280 F.3d at 691. Plaintiffs' payment of the $60 fee is a concrete and

_____

[3] Neither Oakwood nor Plaintiffs expressly define what constitutes "nominal" damages, but it is worth reviewing. Nominal damages are "[a] trifling sum awarded when a legal injury is suffered but there is no substantial loss or injury to be compensated." *Black's Law Dictionary* 473 (10th ed. 2014). In contrast, actual damages are "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." *Id.* at 471. The legal definition of "nominal" should also be contrasted with how that term is used in everyday speech. Specifically, "the word [nominal] has taken on the sense of 'very little.'" Bryan A. Garner, *Garner's Modern American Usage* 551 (Oxford Univ. Press 2003). Thus, "what is *nominal* may be real but not significant." *Id.* Thus, in everyday speech, someone might refer to a small amount of actual damages as "nominal," but such usage would be incorrect in the legal sense. Nominal damages are not a kind of actual damages; nominal damages are awarded when actual damages are not available or cannot be proven. Here, Plaintiffs seek actual damages, i.e., compensation for injuries they actually incurred. They seek nominal damages if they are unable to prove actual damages.

substantial harm. The Sixth Circuit's use of the term "insubstantial" in *Gottfried* does not suggest otherwise. In *Gottfried*, the Sixth Circuit stated that the "key question" in applying this standard was whether the plaintiff had a viable claim for damages. *Gottfried*, 280 F.3d at 693. Viability and substantiality are two different things. It may be that a claim for actual damages can be so small or insubstantial that the Sixth Circuit would disregard it for standing purposes, but that question was not addressed in *Gottfried*. Nor does Oakwood cite any other authority compelling the conclusion that the $60 fee should be disregarded.

Oakwood's second argument is that no constitutional violation occurred because Plaintiffs consented to the inspection of their property. This argument touches on another issue raised by Oakwood, which is whether the Court should consider Plaintiffs' as-applied challenge before their facial challenge. Courts typically address an as-applied challenge first because it is a narrower claim. *See Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 571 (6th Cir. 2012) ("The usual judicial practice is to address an as-applied challenge before a facial challenge . . . this sequencing decreases the odds that facial attacks will be addressed unnecessarily."). If the as-applied challenge fails, then there is no need to consider the facial challenge, which tests whether the statute is unconstitutional in all instances. Here, however, both the as-applied claim and facial claim turn on the same question—whether or not a property owner could voluntarily consent to a pre-sale inspection where the governing ordinance makes it a criminal offense not to do so and refusing an inspection results in the denial of a certificate of occupancy. The parties dispute many factual issues relating to the nature of Plaintiffs'

consent, none of which would be material if the Court determines that any consent under Oakwood's ordinance was not valid under the Fourth Amendment. For that reason, the Court considers this dispositive question first.

Oakwood correctly notes that consent to search is a well-established exception to the Fourth Amendment's warrant requirement. (Doc. 50 at 11, citing *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 547 (6th Cir. 2003) ("Consent from an individual whose property is to be searched or from a third party who possesses common authority over the premises validates a search that would otherwise be considered unreasonable and unconstitutional.").) Oakwood does not cite any case, however, in which a court has upheld the constitutionality of a municipal ordinance containing a warrantless search requirement because the property owner consented to the challenged search.

Plaintiffs argue that the denial of a certificate of occupancy and criminal penalty that could result from a failure to consent are so coercive that any consent given cannot be deemed voluntary. (Doc. 60 at 14, citing, *inter alia*, *Makula v. Village of Schiller Park*, 1995 WL 755305, at *6 (consent to administrative search was not voluntary where failure to do so resulted in forfeiture of apartment building owner's right to operate its property); *Sokolov*, 52 N.Y.2d at 346 ("A property owner cannot be regarded as having voluntarily given his consent to a search where the price he must pay to enjoy his rights under the Constitution is the effective deprivation of any economic benefit from his rental property"); *Dearmore v. City of Garland*, 400 F. Supp. 2d 894, 902 (N.D. Tex. 2005) (consent was not voluntary where "[t]he alternatives presented to the property owner are to consent in advance to a warrantless inspection, or to face criminal penalties"); *see*

*also Wilson*, 46 Ohio St. 2d at 143–44 ("In the case before us, the coercion represented by the sole alternative of possible criminal prosecution clearly negates any 'consent' which may be inferred from the allowance of the inspection and, therefore, the validity of such searches upon the basis of consent is not sustainable.").) The caselaw cited by Plaintiffs is persuasive. The Court agrees that an Oakwood property owner could not have provided voluntary consent under the prior ordinance because failure to do so could result in denial of a certificate of occupancy and a criminal penalty.

Oakwood argues that the ordinance's criminal penalty was not coercive because Oakwood never enforced it against any property owner. (Doc. #50-1, PAGEID # 4044.) Oakwood further asserts that "if Oakwood homeowners had objected to the inspection, the inspection would not occur, and any potential defects would simply transfer to the buyer." (Doc. #50-2, PAGEID # 4046-4047.) Even if these facts are undisputed, they do not remove the coerciveness of Oakwood's ordinance. When evaluating the validity of an individual's consent under the Fourth Amendment, the Sixth Circuit has stated that "not any type of consent will suffice, but instead, only consent that is 'unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion.'" *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999) (quoting *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir.1992)). A person cannot provide such uncontaminated consent when refusal to do so empowers the municipal authority to deny him the right to sell his property (or make it very difficult for him to find a willing buyer and title insurance company) and prosecute him for a criminal misdemeanor. Here, even if Oakwood has never denied a certificate of occupancy or enforced the criminal provisions of its

ordinance, all that it would take is a change in policy for that to occur. In such circumstances, the mere possibility of such action is enough to render any consent involuntary as a matter of law.

Oakwood's third argument is that Plaintiffs rely on inadmissible evidence and fail to address the history of the pre-sale inspection ordinance. The Court struck three unsigned declarations submitted by Plaintiffs, who then corrected that error with the Court's leave. The Court also granted Defendants leave to depose Gayle Hites, the author of one of the declarations.[4] After Ms. Hites' deposition, Defendants filed a Supplemental Memorandum (Doc. 73) containing evidentiary objections to several assertions in her declaration. The Court has not relied on the challenged assertions, however, in determining that Oakwood's prior ordinance violated the Fourth Amendment. Therefore, the Court sets those objections aside. Oakwood's arguments regarding the authority of Plaintiffs' real estate agent to consent on Plaintiffs' behalf are also immaterial in light of the Court's determination that any consent under the prior ordinance was not valid.

Oakwood further asserts that, from 1968 to 1992, its pre-sale inspection program contained a warrant provision and that its omission in 1992 was unintentional. Subsequent email correspondence between Plaintiffs and Kroger, however, show that Oakwood relied on the mandatory nature of the inspection, and the possibility of criminal prosecution for non-compliance, when working with sellers. (Doc. 1-5 at

---

[4] The Court was delayed in its consideration of the parties' motions for summary judgment in large part due to the belated disclosure of Ms. Hites as a witness, which caused Defendants to request leave to take her deposition.

PAGEID # 34.) Regardless of these disputes of fact, Oakwood has not shown the legal significance of its intent to the disposition of Plaintiffs' claims.

Finally, Oakwood claims that Kroger, its code enforcement officer, is entitled to qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Determination of whether an individual is entitled to qualified immunity is a three-step inquiry:

- First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred.

- Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known.

- Third, we determine whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (bullets added) (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)). If the response to any of these inquiries is "no," then the government official cannot be held liable for the alleged violation of the plaintiff's rights.

A right is clearly established if its "contours" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo v.*

*City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "Although it need not be the case that 'the very action in question has been previously held unlawful, . . . in light of pre-existing law the unlawfulness must be apparent." *Id.* (quoting *Anderson*, 483 U.S. at 640). "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Feathers*, 319 F.3d at 848 (citing *Hope v. Pelzer*, 536 U.S. 730 (2002)); *see also Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) ("We do not require a case directly on point [for a right to be clearly established], but existing precedent must have placed the statutory or constitutional question beyond debate.").

The Court has determined—relevant to the first step—that a constitutional violation occurred. Namely, Oakwood's ordinance violated Plaintiffs' Fourth Amendment rights by subjecting them to a warrantless search without valid consent. Under the second step, Oakwood argues that Plaintiffs' rights were not clearly established, however, because there is "no precedent that has held a city inspector cannot rely upon the apparent authority of a real estate agent to consent to a pre-sale inspection." (Doc. 50 at 15.) Plaintiffs counter by defining the right at issue more broadly and arguing that it was well-established before 2016 "that mandatory warrantless administrative searches of private houses violate the Fourth Amendment on their face." (Doc. 54 at 20 (citing *Camara v. Municipal Ct.*, 387 U.S. 523 (1967); *Wilson v. City of Cincinnati*, 46 Ohio St.2d 138, at 141 (1976); *Baker v. City of Portsmouth*, Case No. 1: 14-CV-5L2, 2015 WL 5822659 (S.D. Ohio Oct. 1, 2015); *Hometown Co-op. Apartments v.*

*City of Hometown*, 495 F. Supp. 55 (N.D. Ill. 1980); *Makula v. Vill. of Schiller Park*, No. 95 C

2400, 1995 WL 755305 (N.D. Ill. Dec. 14, 1995); *Brigham City v. Stuart*, 547 U.S. 398, 403

(2006); *Engineering & Mfg. Services, LLC v. Ashton*, 387 Fed.Appx. 575 (6th Cir. 2010);

*Allinder v. State of Ohio*, 808 F.2d 1180 (6th Cir. 1987); *Term Auto Sales, Inc. v. City of

Cleveland*, 54 F.3d 777 (6th Cir. 1995); *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 842-

45 (10th Cir. 2005)).) On this issue, Oakwood has the better argument.

For Kroger to be denied qualified immunity under the second step, it must have

been clearly established that it was unconstitutional for a government official to

conduct a warrantless administrative search of a property, notwithstanding that the

property owners, through their agent, consented to the inspection.[5] The caselaw cited

by Plaintiffs fails to make this showing. In most of the cited cases, the issue of whether

the tenant or property owner's consent constituted an exception to the warrant

requirement was not even addressed. *See Camara*, 387 U.S. at 540; *Baker*, 2015 WL

5822659, at *8; *Hometown Co-op. Apartments*, 495 F. Supp. At 60; *Stuart*, 547 U.S. at 403;

*Ashton*, 387 F. App'x at 584; *Allinder*, 808 F.2d at 1183; *Term Auto Sales, Inc.*, 54 F.3d at

777; *Mimics, Inc.*, 394 F.3d at 845. In *Camara*, for example, the Supreme Court did not

consider the issue because the tenant refused the inspection and the city did not argue

that the landlord's consent alone was sufficient to authorize it. *Camara*, 387 U.S. at 540.

Only two of the cases cited by Plaintiffs address the issue of consent: *Wilson*, 46

Ohio St. 2d 138, and *Makula*, 1995 WL 755305. In *Wilson*, the Supreme Court of Ohio

---

[5] Plaintiffs do not dispute that their agent consented on their behalf; they deny only that such consent was voluntary under the Fourth Amendment. (Doc. 54 at 9.)

held that an individual could not voluntarily consent to an inspection due to the "coercion represented by the sole alternative of possible criminal prosecution" under the city code. *Wilson*, 46 Ohio St. at 144. While this holding is directly on point, the Supreme Court of Ohio cannot establish this principle as a matter of federal law. In *Makula*, the district court held that a property owner's application for a license to operate a multiple family dwelling did not constitute voluntary consent to an inspection. *Makula*, 1995 WL 755305, at *6. Relevant to this case, the district court reasoned that the property owner could not provide such consent because he was not given a true choice in the matter—if he did not consent, he could not operate his building. *Id.* While *Makula* supports Plaintiffs' position (and this Court's ruling on liability), it is a district court case in the Seventh Circuit. It does not clearly establish the contours of the Fourth Amendment rights at issue before this Court.

Plaintiffs alternatively argue that the unconstitutionality of Kroger's actions was clearly established from the general reasoning employed in the caselaw, even if not explicitly discussed. (Doc. 54 at 20 (citing *Feathers*, 319 F.3d at 848.) A reasonable person may have concluded, as this Court has, that a property owner could not voluntarily consent to an inspection under Oakwood's prior ordinance. Yet, because the binding precedent did not specifically address the effect of a property owner's consent in such circumstances, a reasonable person also may have concluded that he could avoid the ordinance's constitutional issues by obtaining consent to an inspection. Thus, in light of these possible outcomes, it cannot be said that "a reasonable person would have known" that conducting an inspection, even with the property owner's consent,

constituted a violation of Plaintiffs' Fourth Amendment rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Having determined that the rights at issue were not clearly established, Kroger is entitled to qualified immunity on Plaintiffs' § 1983 claim for violation of their Fourth Amendment rights. Plaintiffs are entitled to summary judgment on this claim as to Oakwood's liability, however, as they have established the necessary elements and Oakwood's defenses are not meritorious.

## 2. <u>The Unconstitutional Conditions Doctrine</u>

Under the unconstitutional conditions doctrine, the government may not deny a benefit to a person on a basis that infringes a constitutionally protected right, even if the person has no entitlement to that benefit. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 59 (2006). The Supreme Court has explained that this doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2594 (2013).

Plaintiffs allege in their second § 1983 claim that Defendants violated the unconstitutional conditions doctrine by withholding a certificate of occupancy unless Plaintiffs forfeited their Fourth Amendment right against unreasonable searches. (Doc. 12 at ¶ 79.) In response, Oakwood asserts that it never, in fact, denied a certificate of occupancy to any property owner for failure to consent to an inspection. (Doc. 52 at 16.) If a seller did not comply with the pre-sale inspection requirement, then the obligation

to submit to an inspection passed to the buyer. (*Id.*) In this case, Plaintiffs were not denied a certificate of occupancy, even though they denied access to their garage.

Oakwood's argument goes to the issue of what damages are available to Plaintiffs, not whether or not a violation of the unconstitutional conditions doctrine occurred. The violation occurred when Oakwood presented Plaintiffs the choice between agreeing to an inspection and being denied a certificate of occupancy. If Oakwood had denied a certificate of occupancy, then that fact would be a consideration in arguing damages. As noted above, Plaintiffs allege other damages relating to Oakwood's pre-sale inspection program, such as payment of the $60 fee. Plaintiffs are entitled to summary judgment as to liability against Oakwood on this claim.

The law governing the unconstitutional conditions doctrine is less developed than the Fourth Amendment law relevant to Plaintiff's first § 1983 claim. Thus, Plaintiffs' rights also were not clearly established here and Kroger is entitled to qualified immunity on this claim as well.

## ii. <u>Plaintiffs' Claim for Unjust Enrichment and Restitution</u>

Based on the same facts underlying the § 1983 claims, Plaintiffs assert a claim for unjust enrichment and restitution against Oakwood. (Doc. 12 at ¶ 99-110.) Oakwood argues that it is entitled to summary judgment on this claim because the doctrine of unjust enrichment does not apply to a political subdivision under Ohio law. (Doc. 50 at 17 (citing *Wright v. City of Dayton*, 158 Ohio App. 3d 152, 158-59 (Ohio App. 2004); *G.R. Osterland Co. v. City of Cleveland*, 140 Ohio App. 3d 574 (Ohio App. 2000)**;** *City of Cuyahoga Falls v. Ashcraft*, No. 15129, 1991 WL 284188, at *2 (Ohio Ct. App. Dec. 26,

1991); *Magnum Towing & Recovery, LLC v. City of Toledo*, 430 F. Supp. 2d 689, 701 (N.D. Ohio 2006)).) Oakwood unsuccessfully attempts to distinguish this case from the factually analogous *Baker* case, in which Judge Dlott held that the City of Portsmouth could be held liable for unjust enrichment. 2015 WL 5822659. Just as in *Baker*, Oakwood is not immune from Plaintiffs' claim for unjust enrichment/restitution in this case.

"Ohio courts have uniformly held that while sovereign immunity bars tort claims for money damages, it has no application in actions for equitable relief." *Cincinnati v. Harrison*, 2014-Ohio-2844, ¶ 30 (Ohio App. 1 June 30, 2014). Here, Plaintiffs argue that it would be inequitable to permit Oakwood to retain the fees that it collected for purposes of conducting unconstitutional inspections. Oakwood asks the Court to consider *Wright* and *Magnum Towing*, but those cases do not hold that a municipality is immune from equitable claims for restitution of fees unjustly collected.

In *Wright*, the court of appeals considered whether city employees could bring an unjust enrichment claim challenging the city's decision to use certain funds to offset a budget deficit, rather than pay bonuses to the city employees. 158 Ohio App. 3d at 154. It held that the city was immune from suit on such a claim because it was based on a quasi- or implied contract between the city and its employees. *Id.* at 158. The court of appeals explained:

> 'As a check against misuse of city authority by local officials, procedural safeguards have been adopted which govern the creation of public obligations and liabilities. Generally, municipalities may not be bound to a contract unless the agreement is formally ratified through proper channels. As a result, a claim may not be sustained against a municipal corporation upon theories of implied or quasi-contract. Only express agreements adopted by the City in accordance with law may be enforced.'

(Internal citations omitted.) *Cuyahoga Falls v. Ashcraft* (December 26, 1991), Summit App. No. 15129 [1991 WL 284188]. These cases show that a claim for quasi- or implied contract, such as in this case, cannot be brought against a municipality under the theory of unjust enrichment.

158 Ohio App. 3d at 159.

In *Magnum Towing*, a towing company sued the City of Toledo claiming that its procedures for police-ordered tows violated federal and state law. 430 F. Supp. 2d at 692. The city moved to dismiss all claims, including a claim for unjust enrichment. The towing company alleged that the city was unjustly enriched by not paying for tows to auctions and taking a portion of the proceeds from the sales of auctioned vehicles. *Id.* at 701. After noting that a municipality "is not liable for unjust enrichment (quantum meruit) or quasi- and implied contracts," the district court held that the city was entitled to dismissal of the unjust enrichment claim. *Id.* (citing *Brainard v. Toledo*, 2001-Ohio-4352, ¶ 3 (Oct. 24. 2001) and *Wright*, 158 Ohio App. at 159-60). The district court did not engage in a substantive discussion of the issue, but its holding is nonetheless distinguishable based on the facts alleged.

Both *Wright* and *Magnum Towing* involved plaintiffs who provided services to a municipality and sued to recover money allegedly owed for those services. The courts correctly treated their claims as claims in quantum meruit or for breach of a quasi- or implied contract, from which the municipality was entitled to sovereign immunity. These cases do not stand for the proposition that a municipality is immune from claims to recover funds that were paid to the municipality in circumstances where it would be

inequitable to allow it to keep them (i.e., for equitable restitution of funds paid). *Baker,* 2015 WL 5822659, at *8 (citing cases).

"The doctrine of unjust enrichment is that a person shall not be allowed to profit or enrich himself inequitably at another's expense, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made * * *." *Norton v. City of Galion*, 60 Ohio App. 3d 109, 110 (1989) (citing 18 *Ohio Jurisprudence* 3d (1980) 266, 268-269, Contracts, Section 342 (footnote omitted)). Plaintiffs have established Oakwood's liability on their claim for unjust enrichment/restitution here. Plaintiffs paid the $60 fee to Oakwood for the inspection of their property. It would be inequitable to allow Oakwood to retain that money when it was collected pursuant to a unconstitutionally coercive ordinance.

Plaintiffs are entitled to summary judgment as to liability on their unjust enrichment/restitution claim.

### III.  PLAINTIFFS' MOTION TO CERTIFY CLASS

#### A.  Plaintiffs' Proposed Class

Plaintiffs seek to certify a class of "[a]ll individuals and businesses that have (1) sold houses within the City of Oakwood since May 25, 2010; and (2) paid pre-sale inspection fees to the City of Oakwood in conjunction with the sale of their houses." (Doc. 18 at 1.)

#### B.  Legal Standard

A plaintiff seeking class certification bears the burden of proving that the four prerequisites of Rule 23(a) are met and that the proposed class falls within one of the

subcategories of Rule 23(b). *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Both the Supreme Court and the Sixth Circuit require that a district court conduct a "rigorous analysis" of the Rule 23(a) requirements before certifying a class. *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield*, 654 F. 3d 618, 629 (6th Cir. 2011).

The first prerequisite of Rule 23(a) is that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *Id.* at 1079 (citing *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir. 1976)). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980).

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "The commonality test 'is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class.'" *In re Am. Med. Sys., Inc.*, 75 F.3d at 1080 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.10, at 3-50 (3d ed. 1992)).

Rule 23(a)(3) requires that "claims or defenses of the representative parties are typical of the claims or defenses of the class." "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Id.* (quoting 1 Newburg, supra, § 3-13, at 3-76).

The last prerequisite under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There

are two criteria for determining the adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (quoting *Senter*, 532 F.2d at 525).

Rule 23(b) states that a class action may be maintained if Rule 23(a) is satisfied and one of the following three requirements is met:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1)-(3). Plaintiffs argue that certification of the proposed class is proper under each of Rule 23(b)'s three subcategories.

### C. Analysis

#### i. Rule 23(a) Requirements

"Before a court may certify a class pursuant to Rule 23, 'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012) (citing 5 James W. Moore et al., *Moore's Federal Practice* § 23.21[1] (Matthew Bender 3d ed. 1997)). To be a member of Plaintiffs' proposed class, an individual or business must have (1) sold a house within the City of Oakwood since May 25, 2010; and (2) paid pre-sale inspection fees to the City of Oakwood in conjunction with the sale of the house. Both of these requirements should be ascertainable through public records. The class definition is therefore sufficiently definite.

#### 1. Numerosity

The first prerequisite under Rule 23 is that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Oakwood contends that the proposed class does not meet this prerequisite because (1) two-thirds of its members will be eliminated with the failure of the unjust enrichment claim; (2) realtors, not homeowners, often paid the $60 fee for the pre-sale inspection; and (3) many proposed class members consented to the pre-sale inspection. (Doc. 25 at 7-10.) Defendants also

argue that Plaintiffs failed to meet their burden of proof as to this prerequisite. (*Id.* at 9 (citing, inter alia, *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989)).)

Oakwood's argument premised on the failure of the unjust enrichment claim lacks merit—the Court already determined that Plaintiffs are entitled to summary judgment on that claim.

Relevant to the number of individuals in the class, Defendants produced discovery stating that the "number of pre-sale inspections per fiscal year, which includes change of tenant rental unit inspections that are not subject to this lawsuit," is as follows:

| Year | # Pre-Sale Inspections |
|------|------------------------|
| 2010 | 287 |
| 2011 | 248 |
| 2012 | 300 |
| 2013 | 306 |
| 2014 | 281 |
| 2015 | 385 |
| 2016 | 146 |

(Doc. 26-1 at 3.) Defendants argue that there are fewer class members than suggested by the above chart, however, because realtors paid the pre-sale inspection fee for some applications. Plaintiffs claim that owners paid the fee in the "vast majority" of the applications that they reviewed. (Doc. 36 at 14.) Even if half of the class were eliminated, it would still include hundreds of individuals.

Lastly, Defendants assert that, with the exception of Plaintiffs, all of the class members consented to the pre-sale inspections and therefore do not have valid claims.

This argument also fails due to the Court's determination that any consent under the ordinance was not voluntary under the Fourth Amendment.

In sum, Plaintiffs have shown that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There are administrative and logistical issues associated with litigation involving numerous parties, even with far fewer than the hundreds of likely class members in this case. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012) (court may rely on "general knowledge and common sense" in assessing if numerosity requirement is met). In addition, at least some putative class members have sold their homes and moved from Oakwood. Plaintiffs submitted the affidavit of one such individual, who now resides in Colorado. (Doc. 65-1 at PAGEID # 4273.) It is unlikely that such class members would be motivated to return to Ohio to litigate this case, especially in light of the small sums at issue. The small amount of any likely recovery when compared to the burden and cost of the litigation further supports the finding that joinder is impracticable. *See Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D. Ohio 1996).

## 2. <u>Common Questions of Law or Fact</u>

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As discussed above, this requirement is "qualitative rather than quantitative." *In re American Medical Sys.*, 75 F.3d at 1080 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.10, at 3-50 (3d ed. 1992)). Therefore, the existence of common issues, or just a single issue, is sufficient.

This requirement is easily met in this case. The Court has determined that the pre-sale inspection ordinance was unconstitutional on its face, an issue identical as to all class members regardless of their particular circumstances. All class members would also be subject to Oakwood's assertion of sovereign immunity against the unjust enrichment claim. These common questions satisfy Rule 23(a)(2).

### 3. <u>Typicality of Claims or Defenses</u>

In order to satisfy Fed. R. Civ. P. 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. The Sixth Circuit has held that "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082 (quoting 1 Newberg, supra, § 3–13, at 3–76). Plaintiffs' claims meet this requirement for the same reasons that they meet the commonality requirement discussed above. Their facial challenge to the ordinance and restitution claim are identical to those asserted by every class member. The typicality requirement is satisfied.

### 4. <u>Named Plaintiffs' Protection of the Interests of the Class</u>

Rule 23(a)(4) allows certification only if the class representatives also "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement has two criteria: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v.*

*General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). Here, Plaintiffs' interests are aligned with those of the unnamed class members. Both Plaintiffs and the unnamed class members sold real estate in Oakwood during the period when its ordinance did not have an administrative warrant procedure and carried a criminal penalty for non-compliance. Plaintiffs and the class members (or their agents) paid the $60 fee for the pre-sale inspection, had the pre-sale inspection completed, and sold their properties. Plaintiffs and the class members thus have the same interest in pursuing Oakwood for violation of their constitutional rights.

As to the second criterion, Plaintiffs have demonstrated that they will vigorously prosecute the interests of the class through qualified counsel. They engaged counsel experienced with these types of matters and participated in the discovery process. Their counsel, the 1851 Center for Constitutional Law, is a public interest law firm organized under Section 501(c)(3) of the Internal Revenue Code whose mission is the protection of Ohioans' constitutional rights. Thus far, Plaintiffs' counsel have demonstrated their familiarity with the issues raised and ability to prosecute the claims of the class in a diligent manner.

Plaintiffs will fairly and adequately protect the interests of the class under Rule 23(a)(4).

### ii.  Rule 23(b) Requirements

Plaintiffs argue that class certification is proper under Rule 23(b)(1), (2), and (3). The amendment of Oakwood's ordinance mooted Plaintiffs' claim for injunctive relief, however, making certification under Rule 23(b)(1) or (2) less likely to be appropriate.

Regardless, certification under Rule 23(b)(3) is appropriate because, in light of the Court's ruling on the motions for summary judgment, common questions predominate over any questions affecting only individual members and a class action is the superior method for adjudication of Plaintiffs' claims.

The Court's determination that Oakwood's ordinance was unconstitutional on its face removes the individual questions—for example, concerning the voluntariness of consent—that might have precluded certification under Rule 23(b)(3). The most salient individual issue remaining is the question of whether the class members or their respective real estate agents paid the $60 fee. Plaintiffs claim that this question may be resolved, as a factual matter, by reviewing Oakwood's records. Without prejudging the issue, it might be appropriate for Plaintiffs to later move to certify subclasses—one containing those individuals who paid the fee themselves, and another containing those individuals whose agents paid the fee. The parties also may litigate how the identity of the payer affects damages, but this potential split in the class is manageable and does not preclude certification.

Other considerations include the class members' interests in individually controlling the prosecution of separate actions. Fed. R. Civ. P. 23(b)(3)(A). As previously mentioned, the low stakes of this litigation, at least for each individual class member, make it highly unlikely that any of them would be interested in pursuing a separate action. The Court is not aware of any other litigation concerning Oakwood's prior ordinance. Fed. R. Civ. P. 23(b)(3)(B). In addition, concentrating the litigation of Plaintiffs' claims in this forum is desirable. Fed. R. Civ. P. 23(b)(4)(C). While class

members may be located across Ohio or the United States, Oakwood is within this District and only a few minutes from the federal courthouse where this action will be tried. Lastly, this class action should not be difficult to manage. The biggest burden appears to be the identification of the class members and the identity of who paid the inspection fees from Oakwood's records. Plaintiffs' counsel should be able to handle that burden and effectively manage any other minor issues that might arise.

Oakwood also argues that the proposed class is overly broad because it includes all persons who sold houses within six years of the filing of this action. This argument is based on the difference between the two-year statute of limitations for § 1983 actions in Ohio and the six-year statute of limitations for unjust enrichment claims. *Cf. Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is two years after accrual) and *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 182, (1984) (applying six-year statute of limitations under Ohio Rev. Code 2305.7 to claim for unjust enrichment). Assuming it is immune from claims for unjust enrichment, Oakwood argues that any class should be limited to a two-year period consistent with the statute of limitations for § 1983 actions. This argument fails, of course, because the Court determined that Oakwood is not immune from suit on Plaintiffs' unjust enrichment/restitution claim.

Certification of the Plaintiffs' proposed class is appropriate under Rule 23(b)(3).

## IV.  CONCLUSION

For the reasons above, the Court **GRANTS IN PART** Plaintiffs' Amended Motion for Summary Judgment (Doc. 52), **GRANTS IN PART** Defendants' Motion for Summary Judgment (Doc. 50), and **GRANTS** Plaintiffs' Motion for Class Certification (Doc. 18).  Specifically, the Court rules as follows:

1. Plaintiffs are granted summary judgment as to liability on their (a) § 1983 claim under the Fourth Amendment against Oakwood only, (b) § 1983 claim under the unconstitutional conditions doctrine against Oakwood only, and (c) unjust enrichment/restitution claim against Oakwood;[6]

2. Kroger is granted summary judgment in his favor as he is entitled to qualified immunity on both of Plaintiffs' § 1983 claims; and

3. The Court certifies the following class under Fed. R. Civ. P. 23(b)(3):

   All individuals and businesses that have (1) sold houses within the City of Oakwood since May 25, 2010; and (2) paid pre-sale inspection fees to the City of Oakwood in conjunction with the sale of their houses.

In the next few days, the Courtroom Deputy will contact the parties' counsel to schedule a conference call regarding the next steps in this case.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, February 8, 2018.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiffs did not assert the claim for unjust enrichment/restitution against Kroger.